STATE of Minnesota, Respondent,

v.

Gregory Alexander WELCH,
Petitioner, Appellant.

No. C9–01–1095.

Supreme Court of Minnesota.

Feb. 5, 2004.

Rehearing Denied March 16, 2004.

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

## OPINION

PAGE, Justice.

After a bench trial, appellant Gregory Alexander Welch was convicted of kidnapping and attempted second-degree criminal sexual conduct in connection with events that occurred in Battle Creek Regional Park in St. Paul on August 31, 2000. He was sentenced to the statutory maximum of 150 months for attempted second-degree criminal sexual conduct and to a consecutive 45 months for kidnapping.[1] The court of appeals affirmed the convictions, but remanded for reconsideration of a sentencing issue that is not before us. *State v. Welch*, No. C9–01–1095, 2002 WL 1013152, at *2–*5 (Minn.App. May 21, 2002). Welch petitioned for further review of three issues: (1) whether the evidence was sufficient to support either conviction; (2) whether it was error to make the two sentences consecutive; and (3) whether the combined sentence unduly exaggerated the criminality of Welch's conduct. We affirm

the convictions for attempted criminal sexual conduct, but reverse the conviction and sentence for kidnapping.

Shortly before 5 p.m. on August 31, 2000, a 29–year–old woman, identified in this appeal as "S.V.," was walking in Battle Creek Park, pushing her six-month-old daughter in a stroller. While she was walking in a secluded area of the park, she noticed that she was being followed by a man she did not know. She sped up to avoid the man, but he sped up as well. She "veered" toward an area of the park where she saw other people around. She then stopped, hoping the man would pass her, but instead he "tried to make conversation" with her. The man asked S.V. for her name, her baby's name, and her baby's sex. S.V. testified:

> Then [the man] got closer to me, started looking at me and kind of looking at me up and down and asked me how old I was. I told him I was 30, I wanted to appear older. And he said, "No way, you're not 30". And he asked me where my boyfriend was, and I told him that my husband was right across the street. He got closer again and was looking at me and he said, "And he lets you out walking like this by yourself?" I said, "Oh, yeah, we're just going over to the water park". He knew the name of the water park, he said, "Oh, yeah, Water Works". And that's when I said, you know, "Yes, we're going to go over there and look at the water park, we have to go". And that's when I was thrown on the ground.

The district court also found that the man had asked S.V. "how it was that her boy friend [sic] allowed her to walk in the park dressed as she was."

<hr />

1. The sentencing transcript indicates that the court imposed a 54–month sentence for kidnapping. However, the parties and the court of appeals agree that a 45–month sentence was imposed instead. The list of documents accompanying the record suggests that an amended warrant of commitment was filed to correct the sentence to 45 months.

After their dialogue, the man threw S.V. to the ground, and she responded by spraying him in the face with a can of Mace she carried on her key chain. With S.V. lying face-up on the ground and the man straddling her, the man took her hand and "slamm[ed]" it against the ground in an attempt to force her to drop the Mace. He then grabbed her hair with his other hand and "slamm[ed]" her head against the concrete sidewalk several times. Next, he started to choke her. S.V. "g[ave] him a kick[,] and then he stood up all of a sudden." She got to her feet and, noticing bystander Benjamin Steinmeyer in a nearby picnic area, she ran toward him while calling for help. After S.V. reached Steinmeyer, the assailant ran off. Steinmeyer called 911 from a pay phone in the park. S.V. and Steinmeyer gave descriptions of the assailant to the police officers who responded to the call. The police searched the park for the assailant, but did not find him.

The next day, September 1, 2000, S.V. identified Welch as her assailant from a photo lineup. Welch was charged with kidnapping under Minn.Stat. § 609.25, subds. 1(2) and 2(1) (2002), and attempted second-degree criminal sexual conduct under Minn.Stat. §§ 609.17, subd. 1, and 609.343, subd. 1(e)(i) (2002). He waived his right to a jury trial. At trial, S.V. identified Welch as the assailant; Steinmeyer testified that Welch's physical size and characteristics were "consistent" with those of the assailant; and both witnesses identified clothing obtained from Welch as the clothing the assailant had been wearing.

The prosecution introduced evidence of three prior incidents in which Welch approached women in Battle Creek Park under circumstances similar to this case. Much of this evidence came from an audiotaped September 20, 1996, police interview with Welch that was admitted as an exhibit. Welch does not now question the introduction of this evidence under *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), though he and the state disagree about the extent to which it supports his convictions.

### 1. Unnamed Woman # 1

In the taped interview, Welch told police interrogators that he was jogging one day while wearing only shoes and a scarf. He admitted that he had talked to a woman and "touched her" and that she had "started walking away." Welch told police he masturbated as the woman was leaving and then put his clothes back on and continued jogging. There is no information on the record indicating whether Welch was ever charged, or the woman ever identified, in this incident.

### 2. Unnamed Woman # 2

In the audiotape, Welch admitted that he attacked an unidentified woman in Battle Creek Park on September 3, 1996. Welch agreed that he had dragged the woman into the bushes, choked her, and partially exposed her torso by pulling up her clothes. The woman lost consciousness briefly during this incident and, "[w]hen she regained consciousness, she found that her sports shirt had been pulled up to expose her breasts and Welch was several yards away masturbating." Welch pleaded guilty to false imprisonment.

### 3. M.P.

At Welch's trial, a woman identified by the initials M.P. testified that on September 18, 1996, she was walking on a paved trail in a wooded area of the park when she saw a man standing in her path. The man took M.P. by the shoulders, forced her off the pavement, and pushed her to the ground. The man pinned her to the

ground with his arms and legs. M.P. noticed that the man's zipper was open; his "intent seemed clear enough to" her. She testified that she stabbed him in the chest with her key and bit one of his fingers. After she "bit for awhile [sic], he just got up and left." Police subsequently apprehended Welch, who was found walking several blocks from the scene of the attack. In the taped interview, Welch confessed to attacking M.P. Ultimately, he pleaded guilty to false imprisonment.

Based on the evidence presented, the court found Welch guilty of both kidnapping and attempted second-degree criminal sexual conduct. With respect to the attempted second-degree criminal sexual conduct offense, the court found that Welch's "motivation was to obtain sexual gratification by exposing one or more of the [c]omplainant's intimate parts and masturbating while looking at her. In order to fulfill this objective, he intended to remove, or touch, the clothing covering the immediate area of one or more of [c]omplainant's intimate parts." Buttressing this finding, the court also found that (1) Welch's "initial conversation with [c]omplainant had a discernable sexual overtone" and (2) the "positioning of [c]omplainant [during the attack] has sexual overtones."

After a sentencing hearing, the court sentenced Welch to 45 months in prison for kidnapping. The court then made three findings: (1) that Welch was a patterned sex offender as defined by Minn. Stat. § 609.108 (2002);[2] (2) that there were aggravating circumstances "in that the attempted criminal sexual conduct did occur in the presence of a child"; and (3) that Welch was a dangerous offender under Minn.Stat. § 609.1095 (2002).[3] Based on these findings, the court sentenced Welch to the statutory maximum of 150 months for attempted second-degree criminal sexual conduct and made the two sentences consecutive.

The court of appeals upheld the convictions. *Welch,* 2002 WL 1013152, at *2 *5. It also rejected most of Welch's arguments regarding sentencing, holding that "[o]verall, appellant's 195-month sentence is fair," but reversed in part and remanded "for the limited purpose of having the sentence reconsidered in light of" *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *State v. Grossman,* 622 N.W.2d 394 (Minn.App.), *aff'd,* 636 N.W.2d 545 (Minn.2001). *Welch,* 2002 WL 1013152, at *4. The state did not seek review of the remanded issue.

**I.**

▮ Welch argues that the evidence adduced at trial was insufficient to convict him of attempted second-degree criminal sexual conduct because the state failed to prove that he intended to accomplish sexual contact with S.V.

**2.** Section 609.108, subdivision 1(a)(3), defines a "patterned sex offender" as "one whose criminal sexual behavior is so engrained that the risk of reoffending is great without intensive psychotherapeutic intervention or other long-term controls." The statute sets forth procedural requirements for finding a convict to be a patterned sex offender, *id.* at subd. 1(a)(1)-(3), and thereupon allows a court to impose a sentence "not less than double the presumptive sentence under the sentencing guidelines and not more than the statutory maximum, or if the statutory maximum is less than double the presumptive sentence, for a period of time that is equal to the statutory maximum." *Id.* at subd. 1. Welch does not contest the trial court's finding that he qualified as a patterned sex offender under the statute.

**3.** Before the court of appeals, the parties stipulated that the district court's finding that Welch was a dangerous offender under Minn. Stat. § 609.1095 was error.

When reviewing a claim of insufficient evidence, this court's inquiry is limited to whether the fact finder could have reasonably concluded that defendant was guilty beyond a reasonable doubt. *State v. Huss,* 506 N.W.2d 290, 292 (Minn.1993). The court views the evidence in the light most favorable to the verdict and assumes that the fact finder believed the state's witnesses and disbelieved any contrary evidence. *Id.*

The district court found that Welch "intended to remove, or touch, the clothing covering the immediate area of one or more of [c]omplainant's intimate parts." The court based this finding upon Welch's past actions, as revealed in the *Spreigl* evidence, the "discernable sexual overtone" of Welch's initial conversation with S.V., and the position of Welch's body on top of S.V. during the attack.

Welch argues that the state "failed to prove that [he] intended to accomplish sexual contact." He disputes the court's findings regarding any "sexual overtone" and argues that the *Spreigl* evidence actually supports his claim because he was not convicted of a sex crime in the prior incidents and because there is no evidence that he ever touched the "intimate parts" of the victims of the incidents. The evidence of the prior attacks, Welch argues, supports his assertions that he has never intended to rape or have sexual contact with the women he "confronts."

Criminal sexual conduct in the second degree is defined as follows:

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if any of the following circumstances exists:
>
> * * * *

(e) the actor causes personal injury to the complainant, and

* * * *

(i) the actor uses force or coercion to accomplish the sexual contact * * *.

Minn.Stat. § 609.343, subd. 1. For these purposes, "sexual contact" is defined as follows:

> any of the following acts committed without the complainant's consent, * * * and committed with sexual or aggressive intent:
>
> (i) the intentional touching by the actor of the complainant's intimate parts, or
>
> * * * *
>
> (iv) in any of the cases above, the touching of the clothing covering the immediate area of the intimate parts.

Minn.Stat. § 609.341, subd. 11(a) (2002).

■ "Attempt" is defined as follows:

> Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime * * *.

Minn.Stat. § 609.17, subd. 1. Interpreting the intent prong of "attempt," this court has stated that " 'an attempt to commit any crime requires a specific intent to commit that particular offense.' " *State v. Zupetz,* 322 N.W.2d 730, 734 (Minn.1982) (quoting Rollin M. Perkins, *Criminal Law* at 573–74 (2d ed.1969)). "Intent is an inference drawn by the [finder of fact] from the totality of circumstances." *State v. Raymond,* 440 N.W.2d 425, 426 (1989).

■ Viewing the evidence in the light most favorable to the verdict, Welch's arguments are not persuasive. The district court's finding that the initial conversation between S.V. and Welch contained a "sexual overtone" is supported by the evidence. Second-degree criminal sexual conduct

does not require an intent to commit rape. Under Minn.Stat. § 609.341, subd. 11(a), "sexual contact" includes the intentional "touching of the clothing covering the immediate area of the intimate parts" when that touching is "committed with sexual * * * intent." In light of the "sexual overtone" of Welch's statements to S.V., the *Spreigl* evidence concerning Unnamed Woman # 2 (where Welch partially exposed the torso of his victim by pulling up her clothes before masturbating near her), and the positioning of Welch on top of S.V., it was not error for the district court to find both sexual intent and intent to engage in sexual contact.

## II.

Welch argues that the failure to prove the underlying felony of attempted second-degree criminal sexual conduct eliminated a necessary element of his kidnapping conviction, that it be done to facilitate a felony. "Kidnapping" is defined as follows:

> Whoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent or, if the person is under the age of 16 years, without the consent of the person's parents or other legal custodian, is guilty of kidnapping and may be sentenced as provided in subdivision 2:
>
> * * * *
>
> (2) To facilitate commission of any felony or flight thereafter; or
>
> (3) To commit great bodily harm or to terrorize the victim or another * * *.

Minn.Stat. § 609.25, subd. 1. Because we hold that there was sufficient evidence to justify the criminal sexual conduct conviction, Welch's challenge to the underlying

felony element of his kidnapping conviction also fails.

Welch does not argue that his actions were too minimal to constitute confinement or removal for purposes of the crime of kidnapping. But, while Welch's appeal was pending, this court decided *State v. Smith,* 669 N.W.2d 19 (Minn.2003), which held as follows:

> We believe that confinement or removal must be criminally significant in the sense of being more than merely incidental to the underlying crime, in order to justify a separate criminal sentence. Under our current sentencing scheme, convictions that solely rely on acts incidental to the commission of one crime—here confining Holder in the course of murder—to constitute the elements of kidnapping (confinement) unduly exaggerate the criminality of the conduct. We conclude that where the confinement or removal of the victim is completely incidental to the perpetration of a separate felony, it does not constitute kidnapping.

*Id.* at 32 (footnote omitted).

In this case, the facts clearly do not support a conviction for kidnapping. No removal—let alone nonincidental removal—is even alleged. Further, the confinement that forms the basis of the kidnapping is the very force and coercion that supports the attempted second-degree criminal sexual conduct conviction. If such incidental conduct can support a kidnapping conviction, it is difficult to hypothesize about any sexual assault or attempted sexual assault that would not also constitute a kidnapping. Indeed, the state seemed to concede as much at oral argument.[4]

---

4. During oral argument, the following questioning occurred:

[Court]: I want you to give me an example of when you can rape somebody and not kidnap them.

Because the evidence here shows no removal and less confinement than was present in *Smith*, the application of our holding in *Smith* requires that the conviction for kidnapping be reversed and the sentence for kidnapping be vacated. This conclusion also embraces the reasoning and concerns set forth in our established precedent that kidnapping convictions may unfairly exaggerate "the criminality of a defendant's conduct in those cases where the confinement was completely incidental to the crime committed during the course of kidnapping." *State v. Crocker*, 409 N.W.2d 840, 845 (1987); *see also State v. Morris*, 281 Minn. 119, 123–24, 160 N.W.2d 715, 718 (1968).[5]

Affirmed in part and reversed in part.

HANSON, Justice (concurring in part, dissenting in part).

Although I concur in the affirmance of Welch's conviction for attempted second-degree criminal sexual conduct, I dissent on the reversal of Welch's conviction for kidnapping. I would not reach the issue of the sufficiency of the evidence to support the kidnapping conviction because Welch did not argue that issue on appeal and the state has been given no opportunity to address it.

Welch did challenge the imposition of consecutive sentences for kidnapping and attempted second-degree criminal sexual conduct. I would conclude that such sentencing unduly exaggerates the criminality of Welch's conduct because the kidnapping conviction was based on minimal confinement and the sentence for criminal sexual conduct reflected an upward departure more than six times the presumptive sentence. I would modify Welch's sentences of 150 months for attempted criminal sexual conduct and 45 months for kidnapping to run concurrently.

GILBERT, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice HANSON.

MEYER, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice HANSON.

[State]: Well, I suppose the easiest one would be when you rape a sleeping woman. You can accomplish a—

[Court]: Is that the only—okay, I mean, you could dispute that, but is there anything else besides a sleeping woman, or a woman in a coma.

[State]: It would perhaps be difficult to separate them out, yes.

[Court]: So every rape is an automatic kidnapping, basically, if I agree with you that a sleeping woman would not be confined.

[State]: Well, if you take away that example, and you say that any physical restraint on a woman during a rape is a kidnapping, I would probably agree that it does fit the elements of kidnapping as this court has set them out.

5. Beyond our concern that the criminality of a defendant's conduct may be unfairly exaggerated when the confinement justifying the kidnapping charge is completely incidental to the underlying criminal sexual conduct offense, we note that if every sexual assault or attempted sexual assault also constitutes a kidnapping, the attendant fiscal ramifications could be overwhelming given that the maximum possible sentence for kidnapping under Minn.Stat. § 609.25, subd. 2(2), is "imprisonment for not more than 40 years."