**STATE of Minnesota, Respondent,**

v.

**Jose Santoya JUAREZ, Appellant.**

No. A11–2189.

Supreme Court of Minnesota.

Oct. 2, 2013.

476

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, Saint Paul, Minnesota; and Jennifer Fischer, Kandiyohi County Attorney, Willmar, Minnesota, for respondent.

John E. Mack, Mack & Daby, P.A., New London, Minnesota, for appellant.

Caroline S. Palmer, Saint Paul, Minnesota, for amicus curiae Minnesota Coalition Against Sexual Assault.

## OPINION

DIETZEN, Justice.

The principal issue in this case is whether Minn.Stat. § 609.3455 (2012), as applied to appellant Jose Santoya Juarez, imposes "cruel and unusual" punishment in violation of the federal constitution, or "cruel or unusual" punishment in violation of the state constitution. A grand jury indicted Juarez for attempted first-degree criminal sexual conduct, second-degree criminal sexual conduct, kidnapping, and third-degree assault. Juarez waived his right to a jury trial and, following a court trial, was found guilty on all four counts. The State sought to enhance Juarez's sentence pur-

suant to Minn.Stat. § 609.3455, subd. 2(a), which provides for mandatory life imprisonment without the possibility of release for certain aggravated sex crimes. Juarez waived his right to a jury trial on the sentencing enhancement, and the district court found beyond a reasonable doubt that Juarez met the requirements of section 609.3455, subdivision 2, because he had a qualifying prior sex offense conviction and his present conviction for second-degree criminal sexual conduct included a "heinous element." The district court therefore entered judgment of conviction and imposed a sentence of life imprisonment without the possibility of release on the charge of second-degree criminal sexual conduct. The court of appeals affirmed. Because we conclude that a sentence of life imprisonment without the possibility of release is not cruel or unusual punishment for Juarez's aggravated criminal sexual conduct and because Juarez's other claims lack merit, we affirm.

On July 27, 2010, S.M. was at the Eagles Club bar in Willmar, Minnesota, with several friends. While at the bar, S.M. received unwanted sexual attention from Juarez. Juarez was intoxicated at the time and, by his own admission, had consumed at least 16 beers. Despite S.M.'s objections, Juarez touched her legs and breasts, and also attempted to touch her genital area. Someone complained to the bartender, Juarez was asked to leave, and eventually he did.

Shortly thereafter, S.M. left the bar to smoke a cigarette. When she went outside, Juarez came up behind her, grabbed her by the arm, and dragged her 209 feet across a parking lot and then to the back end of a narrow alley between two buildings. The alley was only 22 inches wide and was littered with garbage and debris. As Juarez forced S.M. into the alley, he grabbed her head and struck it against the cement wall two or three times, causing her to lose consciousness briefly. He called S.M. sexually derogatory names, told her that he knew she wanted to have sex with him, and said that she was "going to get it either way." S.M. screamed for help, but Juarez told her to stop screaming or he would make her stop. Juarez grabbed her breasts and genital area, ripped her shirt, and attempted to remove her pants. Eventually, he climbed on top of S.M. and pinned her arms with his knees. Juarez tried to force his penis into her mouth, but he was interrupted when S.M.'s friends arrived on the scene and threw Juarez off her. Juarez fled, but police captured him a short time later, and he was positively identified as the assailant by S.M. and two of her friends.

A Kandiyohi County grand jury returned a four-count indictment against Juarez, charging him with attempted first-degree criminal sexual conduct, second-degree criminal sexual conduct, kidnapping, and third-degree assault. The indictment for criminal sexual conduct in the second degree included an allegation that Juarez was subject to the enhanced sentencing provision of Minn.Stat. § 609.3455, subd. 2(a)(2), which requires a court to sentence an offender convicted of certain types of first—or second-degree criminal sexual conduct to life imprisonment without the possibility of release if the offender has a previous qualifying sex offense conviction "and the fact finder determines that a heinous element exists." Minn.Stat. § 609.3455, subd. 2(a)(2). The indictment alleged that the statutory prerequisites were met because Juarez had "removed [S.M.] from one place to another, did not release her in a safe place, and had a prior conviction" for third-degree criminal sexual conduct.

Juarez waived his right to a jury trial and the district court conducted a two-day

bench trial after which it issued findings of fact, conclusions of law, and an order finding Juarez guilty on all four counts. The court found, among other things:

> Defendant removed [S.M.] from just outside the back door of the Eagles Club and took her against her will to the north end of the alley ... a distance of 209 feet.... Defendant grabbed her right arm and wrist from behind and dragged her to the alley, forced her into the alley and eventually to the north end of the alley. She tried to resist ... She did not consent to going with him to this alley.

After the court found Juarez guilty, the State reiterated its intent to seek a mandatory life sentence pursuant to Minn.Stat. § 609.3455, subd. 2. Juarez waived his right to a jury trial on the sentencing enhancement. The court held an evidentiary hearing during which the State introduced evidence that Juarez had a previous conviction for third-degree criminal sexual conduct in 1997 based on an incident in which he engaged in forcible, nonconsensual intercourse with his brother's girlfriend. The State did not, however, reintroduce evidence from the guilt phase that Juarez had removed S.M. from one place to another and failed to release her in a safe place.

The district court found that Juarez had been convicted of a prior qualifying sex offense in 1997 and that his current conviction for second-degree criminal sexual conduct included a "heinous element" because Juarez removed S.M. without her consent from the back door of the Eagles Club, transported her 209 feet to the alley, and did not release her in a safe place. The court therefore sentenced Juarez to life imprisonment without the possibility of release on the charge of second-degree criminal sexual conduct. Juarez appealed, and the court of appeals affirmed. *State v.*

*Juarez,* No. A11–2189, 2012 WL 5476119 (Minn.App. Nov. 13, 2012).

### I.

Juarez was sentenced pursuant to Minn. Stat. § 609.3455, subd. 2, which provides enhanced sentences for certain dangerous sex offenders. The statute states:

(a) Notwithstanding the statutory maximum penalty otherwise applicable to the offense, the court shall sentence a person convicted [of certain kinds of criminal sexual conduct in the first or second degree] to life without the possibility of release if:

. . . .

(2) the person has a previous sex offense conviction for [first-, second-, or third-degree criminal sexual conduct], and the fact finder determines that a heinous element exists for the present offense.

Minn.Stat. § 609.3455, subd. 2(a). The term "heinous element" includes, among other things, that the defendant "without the complainant's consent, removed the complainant from one place to another and did not release the complainant in a safe place." Minn.Stat. § 609.3455, subd. 1(d)(8).

Juarez argues that his sentence pursuant to section 609.3455 violates both the federal and state constitutions because it is grossly disproportionate to his crime. The State argues that Juarez's sentence is not disproportionate in light of the nature of his crime and his status as a recidivist offender. Constitutional interpretation is a legal question that we review de novo. *State v. Brooks,* 604 N.W.2d 345, 348 (Minn.2000). When the challenger claims that a statute imposes cruel or unusual punishment, he "bears the heavy burden ... of showing that our culture and laws emphatically and well nigh universally reject the sentence." *State v. Heden,* 719

N.W.2d 689, 698 (Minn.2006) (citation omitted) (internal quotation marks omitted). Because Juarez asserts claims under both the federal and state constitutions, we will address each constitutional claim separately.

A.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). Although the Eighth Amendment " 'does not require strict proportionality between crime and sentence[,]' " it does forbid " 'extreme sentences that are 'grossly disproportionate' to the crime.' " *Id.* at ——, 130 S.Ct. at 2021 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 997, 1000–01, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)). In *Graham,* the Supreme Court explained that its cases addressing the proportionality of sentences fall into two general classifications: (1) challenges to the length of sentences on a case-by-case basis, considering "all the circumstances in a particular case[,]" and (2) categorical challenges to certain punishments based on the nature of the offense or the characteristics of the offender. *Id.* at ——, 130 S.Ct. at 2021–22. Juarez asserts a case-by-case challenge here.

Under the case-by-case approach, we consider "all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Id.* at ——, 130 S.Ct. at 2021. In determining whether a sentence is grossly disproportionate to the defendant's crime, we begin by comparing the gravity of the offense to the severity of the sentence. *Id.*

at ——, 130 S.Ct. at 2022. In the "rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality[,]" we then compare the defendant's sentence with sentences received by other offenders both inside and outside of the jurisdiction. *Id.* at ——, 130 S.Ct. at 2022 (internal quotation marks omitted) (alteration in original). If this comparative analysis validates the initial judgment that the sentence is grossly disproportionate, then the sentence is cruel and unusual. *Id.* at ——, 130 S.Ct. at 2022.

It is undisputed that life imprisonment without the possibility of release is the most severe sentence permitted by law in Minnesota and will result in Juarez, who was 52 years old when he was sentenced, spending the rest of his life in prison. The gravity of the offense, however, is very serious. Juarez was sentenced for criminal sexual conduct in the second degree, under a provision that required both that he used force to accomplish the sexual contact and that he caused personal injury to the victim. Minn.Stat. § 609.343, subd. 1(e)(i) (2012). He committed a violent sexual assault that included ambushing S.M., striking her head against a concrete wall, grabbing her genitals and breasts, and trying to force his penis into her mouth. The attack made S.M. fear for her life and left her hysterical and disoriented afterwards. In a statement read at sentencing, S.M. explained the lingering emotional and psychological consequences of Juarez's attack, including nightmares, sleeplessness, and fear of being alone. Courts have long recognized the seriousness of rape and other sexual assault crimes. *See Coker v. Georgia,* 433 U.S. 584, 597–98, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (discussing the "highly reprehensible" nature of rape and noting that, short of homicide, it is the "ultimate violation of self").

Juarez argues that the presumptive sentence for second-degree criminal sexual conduct under the Minnesota Sentencing Guidelines already accounts for the seriousness of his conduct. We disagree. Juarez's punishment under section 609.3455, subdivision 2, is not attributable *solely* to his sexual misconduct; instead, his punishment is also attributable to two additional facts: (1) his prior conviction and (2) the "heinous element" of removing S.M. and failing to release her in a safe place.

Specifically, Juarez was previously convicted of a serious sexual assault crime involving nonconsensual and forcible vaginal intercourse, and has reoffended despite having had the opportunity to reform his conduct after his prior conviction. *See Rummel v. Estelle*, 445 U.S. 263, 278, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (noting that the recidivist offender "has been both graphically informed of the consequences of lawlessness and given an opportunity to reform," but to no avail). The Supreme Court has stated that "States have a valid interest in deterring and segregating habitual criminals[,]" and that "[r]ecidivism has long been recognized as a legitimate basis for increased punishment." *Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (citation omitted) (internal quotation marks omitted); *accord Solem v. Helm*, 463 U.S. 277, 296, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Although the Minnesota Sentencing Guidelines already take criminal history into account in determining the presumptive sentences for crimes, the Legislature has concluded that certain recidivist sex offenders should be treated more severely than other recidivist offenders. *See Smith v. Doe*, 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) noting "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class"; *McKune v.*

*Lile*, 536 U.S. 24, 33–34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that the risk of sex offender recidivism is "frightening and high" and, when sex offenders reenter society, "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault").

Juarez's sentence was also attributable to the "heinous element" of the present offense. In particular, the district court found that Juarez forcibly dragged S.M. away from a safe, public place while she screamed and resisted, and took her into a narrow, dark, and isolated alley. The Legislature could reasonably determine that criminal sexual conduct is more culpable when the defendant carries the victim away to another place, because the removal may embolden and increase the power of the defendant by making him unlikely to be interrupted or caught; protract the length of the criminal episode; increase the victim's terror and psychological harm; and indicate a predatory mindset on the part of the defendant. We defer to the Legislature in making policy judgments of this kind with regard to sentencing. *See Solem*, 463 U.S. at 290, 103 S.Ct. 3001; *State v. Mitchell*, 577 N.W.2d 481, 488 (Minn.1998).

We conclude that comparing the severity of Juarez's sentence with the gravity of his offense—including his recidivism and the existence of a heinous element—does not support an inference of gross disproportionality. We, therefore, need not proceed to the second step of the case-by-case analysis to compare Juarez's sentence with sentences received by other offenders both inside and outside of the jurisdiction. *See Graham*, 560 U.S. at ——, 130 S.Ct. at 2022; *Ewing*, 538 U.S. at 30, 123 S.Ct. 1179. Consequently, we hold that his sentence of life imprisonment without the possibility of release does not violate the Eighth Amendment.

### B.

■ Juarez also contends that his sentence violates the Minnesota Constitution. The state constitution contains a provision that is nearly identical to the Eighth Amendment except that it prohibits "cruel *or* unusual" punishments instead of "cruel *and* unusual" punishments. *Compare* Minn. Const. art. I, § 5 (emphasis added), *with* U.S. Const. amend. VIII (emphasis added). This difference in wording is "not trivial" because the "Supreme Court has upheld punishments that, although they may be cruel, are not unusual." *Mitchell,* 577 N.W.2d at 488. Thus, we have stated that "the Minnesota Constitution provides more protection than the U.S. Constitution." *State v. McDaniel,* 777 N.W.2d 739, 753 (Minn.2010).

■ In determining whether a particular sentence is cruel or unusual under the Minnesota Constitution, a court should separately examine whether the sentence is cruel and whether it is unusual. *See Mitchell,* 577 N.W.2d at 489–90. First, a court should compare the gravity of the offense to the severity of the sentence. This first step analyzes whether the sentence is "cruel," and is consistent with the first step of the case-by-case analysis for the Eighth Amendment under *Graham. See id.* at 489. Second, a court should compare the defendant's sentence with sentences received by other offenders convicted of the same or similar offenses both inside and outside of Minnesota. *See id.* at 490. This second step analyzes whether a sentence is "unusual." *Id.* We believe this approach gives effect to the difference in wording of the Minnesota Constitution. Although we have not articulated a precise test for determining whether a sentence is "unusual," we generally consider whether a "consensus exists among the states" that the sentence offends evolving standards of decency. *Id.* In so doing, we give due

regard to the Legislature's prerogative to decide what conduct shall constitute crimes, experiment with different penological objectives, and determine "what sanctions, if any, serve the interests of the people it represents." *Id.* at 488 (quoting *McLaughlin v. State,* 291 Minn. 277, 284, 190 N.W.2d 867, 872 (1971)). The burden is on the defendant challenging his sentence to show that it is unusual and that there is a consensus against it. *See Heden,* 719 N.W.2d at 698 (noting that the challenger "bears the heavy burden . . . of showing that our culture and laws emphatically and well nigh universally reject the sentence") (citation omitted) (internal quotation marks omitted).

■ Applying this analysis, we conclude that Juarez's life sentence without the possibility of release does not violate the Minnesota Constitution. Specifically, Juarez's sentence is not cruel because it is not "out of all proportion to the nature of the crime," *State v. Christie,* 506 N.W.2d 293, 300 (Minn.1993) (quoting *State v. Anderson,* 280 Minn. 461, 462–63, 159 N.W.2d 892, 894 (1968)), in light of the gravity of the offense, his recidivism, and the existence of a heinous element.

■ Moreover, we also conclude that Juarez's sentence is not unusual. Juarez has failed to come forward with any evidence that other states reject life sentences for aggravated sex crimes. In contrast, the State provided evidence that a majority of other jurisdictions have statutes mandating life imprisonment without the possibility of release for certain sex offenders, based on either aggravating circumstances or the defendant's prior convictions, or both. While some of these states require arguably more egregious conduct to trigger the punishment imposed here, this evidence demonstrates that the punishment of life without release is hardly universally rejected for sexual offenses

by repeat offenders. *See, e.g., State v. Oliver*, 812 N.W.2d 636, 641–43 (Iowa 2012) (upholding a sentence of life without release for a defendant's second sexual abuse conviction, noting that "Iowa is anything but an 'outlier' when it comes to the severe treatment of repeat sexual offenders who target children, use force, or prey on the incapacitated"); *State v. Foley*, 456 So.2d 979, 981 (La.1984) ("[M]andatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentence for crimes classified as felonies"); *see also State v. Berger*, 212 Ariz. 473, 134 P.3d 378, 383–84 (2006); *Adaway v. State*, 902 So.2d 746, 747 (Fla.2005); *People v. Huddleston*, 212 Ill.2d 107, 287 Ill.Dec. 560, 816 N.E.2d 322, 335–36 (2004); *State v. Bell*, 754 P.2d 55, 57–60 (Utah 1988); *Daniel v. State*, 78 P.3d 205, 214–16 (Wyo.2003).

■ Juarez further argues that his sentence is unusual because, before the enactment of Minn.Stat. § 609.3455 in 2005, the sexual offense for which he was convicted was punished much less severely. But the fact that an increase in punishment has only recently been authorized for a defendant's conduct is not dispositive. Every time a legislature increases the punishment for a particular offense, there will always be some disparity between those who were punished before the increase and those who were punished after. In analyzing whether a sentence is unusual, we will not strike down a punishment because it is relatively new. Instead, we will defer, subject to constitutional limits, to the Legislature's judgment that certain "conventional approaches to punishment" are not adequate "to protect the public

safety[,]" and that different approaches to punishment must be considered. *See Ewing*, 538 U.S. at 24, 123 S.Ct. 1179 (noting that "[t]hough three strikes laws may be relatively new, our tradition of deferring to state legislatures in making and implementing such important policy decisions is longstanding"); *McDaniel*, 777 N.W.2d at 754 (noting that the legislative trend in Minnesota increased "the range of crimes subject to a mandatory life sentence").

We conclude that the imposition of life imprisonment without the possibility of release, pursuant to Minn.Stat. § 609.3455, subd. 2, is not cruel or unusual punishment for Juarez's aggravated criminal sexual conduct. Therefore, Juarez's sentence does not violate either the Eighth Amendment to the United States Constitution or Article I, Section 5, of the Minnesota Constitution.

## II.

Juarez next argues that the district court erred in finding that his conduct included a "heinous element," and therefore erred in imposing a mandatory life sentence. Pursuant to Minn.Stat. § 609.3455, subd. 2, an offender is subject to a mandatory life sentence without the possibility of release if three elements are met: (1) the person is convicted of certain types of criminal sexual conduct in the first or second degree; (2) the person has a previous sex offense conviction for a violation of Minn.Stat. §§ 609.342, 609.343, or 609.344 (2012); and (3) the factfinder determines that a heinous element exists for the present offense. Minn.Stat. § 609.3455, subd. 2(a)(2).[1] Of the three statutory requirements for a mandatory

---

1. Alternatively, an offender is subject to a mandatory life sentence without possibility of release pursuant to Minn.Stat. § 609.3455, subd. 2 if two elements are met: (1) the person is convicted of certain types of crimi-

nal sexual conduct in the first or second degree; and (2) the factfinder determines that two or more heinous elements exist. Minn. Stat. § 609.3445, subd. 2(a)(1).

life sentence under section 609.3455, subdivision 2, the only dispute in this case is whether a heinous element exists for the present offense.

Juarez relies on our decisions in *State v. Smith*, 669 N.W.2d 19 (Minn.2003) and *State v. Welch*, 675 N.W.2d 615 (Minn. 2004) to support his argument that the present offense did not involve a heinous element. In particular, he argues that his alleged "removal" of S.M. from one place to another was completely incidental to his second-degree criminal sexual conduct offense under Minn.Stat. § 609.343, subd. 1(e)(i), and therefore is not separate criminally significant conduct supporting a life sentence.

In *Smith*, we reversed a conviction of first-degree murder while committing kidnapping where the only evidence to support the "kidnapping" component was an accomplice's act of blocking the doorway when the victim tried to flee the room during the deadly assault. 669 N.W.2d at 32. We expressed concern that the kidnapping element of the offense had increased the defendant's punishment to life in prison without the possibility of release based on minimal additional conduct. We stated:

> We believe that confinement or removal must be criminally significant in the sense of being more than merely incidental to the underlying crime, in order to justify a separate criminal sentence. Under our current sentencing scheme, convictions that solely rely on acts incidental to the commission of one crime— here confining [the victim] in the course of murder—to constitute the elements of

kidnapping (confinement) unduly exaggerate the criminality of the conduct. We conclude that where the confinement or removal of the victim is completely incidental to the perpetration of a separate felony, it does not constitute kidnapping.

*Id.* Because the victim "was confined only momentarily" after the attack was already underway, we concluded that the confinement was completely incidental to the first-degree premeditated murder and reversed the conviction for first-degree murder while committing kidnapping. *Id.* at 32–33.[2]

Similarly, in *Welch*, the defendant was convicted of both attempted second-degree criminal sexual conduct and kidnapping after he threw a woman to the ground, straddled her, and attempted to sexually assault her. 675 N.W.2d at 616–17. But we found the evidence insufficient to support the kidnapping conviction, noting that "[n]o removal—let alone nonincidental removal—is even alleged," and that the confinement forming "the basis of the kidnapping is the very force and coercion that supports the attempted second-degree criminal sexual conduct conviction." *Id.* at 620. We reasoned that "[i]f such incidental conduct can support a kidnapping conviction, it is difficult to hypothesize about any sexual assault or attempted sexual assault that would not also constitute a kidnapping." *Id.*

▮ We conclude that Juarez's conduct in removing S.M. 209 feet is not completely incidental to his criminal sexual conduct.[3] Juarez's act of removing S.M. to

2. *Smith* was later overruled on other grounds. See *State v. Leake*, 699 N.W.2d 312, 326 n. 10 (Minn.2005).

3. The court of appeals held that *Smith* and *Welch* were inapplicable because those cases "address whether evidence is sufficient to es-

tablish kidnapping as a *separate offense*," not whether facts similar to kidnapping can support a sentencing enhancement under section 609.3455. See *Juarez*, 2012 WL 5476119, at *5. We will assume without deciding that the doctrine set out in *Smith, Welch*, and their

the alley constitutes culpable conduct separate and distinct from his criminal sexual conduct. Juarez's conviction for second-degree criminal sexual conduct punishes him for using force and violence to engage in nonconsensual sexual contact with S.M., and causing her personal injury. *See* Minn.Stat. § 609.343, subd. 1(e)(i). Section 609.3455, subdivision 2, on the other hand, takes into account Juarez's prior conviction and *other* culpable and predatory conduct, such as the fact that Juarez moved S.M. away from a safe location—in which she was out in the open and close to her friends—and transported her to a place that was confined and isolated, and where she would be more vulnerable to him.[4] Contrary to Juarez's argument, the fact that the removal was committed at approximately the same time as Juarez's criminal sexual conduct and was intended to facilitate that conduct does not make the removal completely incidental. *See State v. Earl,* 702 N.W.2d 711, 722–23 (Minn.2005) (rejecting defendant's argument that no criminally-significant kidnapping occurred "because his victims were confined merely to keep them out of the way while he committed burglary," and noting that "[a]lthough the confinement or removal in this case may have been necessary to commit the burglary, it was not merely incidental" because it was "criminal conduct distinct from the burglary").

Because Juarez's conduct supporting the heinous element was separate and meaningfully distinct from the conduct underlying his conviction for second-degree criminal sexual conduct, it is criminally significant and therefore the district court did not err in finding a "heinous element" and imposing a life sentence without the possibility of release.

## III.

 Juarez next contends that the enhancement of his sentence under section 609.3455, subdivision 2, was unlawful because the district court's sentencing procedure violated his rights under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In particular, Juarez argues that the State failed to introduce evidence at the sentencing phase of the proceeding to prove the "heinous element" that Juarez removed S.M. from one place to another and did not release her in a safe place. Although it is undisputed that the State presented evidence of these facts during the guilt phase of the proceeding, Juarez argues that the State was required to re-introduce the evidence during the sentencing phase of the proceeding.

 Pursuant to *Blakely* and *Apprendi,* "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 301, 124 S.Ct. 2531

progeny is applicable to sentencing enhancements because we conclude that Juarez's conduct is criminally significant and thus satisfies the requirements of *Smith* and *Welch.*

4. To the extent that Juarez argues that his removal of S.M. is completely incidental to his kidnapping or assault convictions, rather than his second-degree criminal sexual conduct conviction, his argument fails. The doctrine of *Smith* and *Welch* is premised on con-

cerns about multiple sentencing. *See Smith,* 669 N.W.2d at 31–32. Because Juarez was not sentenced for either his kidnapping or assault convictions, we need not address whether his conduct in removing S.M. is completely incidental to those convictions. *See id.* (citing *State v. Morris,* 281 Minn. 119, 160 N.W.2d 715 (1968); *State v. Crocker,* 409 N.W.2d 840 (Minn.1987); and *Dunn v. State,* 486 N.W.2d 428 (Minn.1992)).

(quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). The "heinous element" of "removing" S.M and failing to release her in a safe place increased Juarez's punishment beyond the statutory maximum for second-degree criminal sexual conduct.

■ Here, Juarez properly waived his right to a jury at both the guilt phase and the sentencing phase of the proceeding. *See Blakely,* 542 U.S. at 310, 124 S.Ct. 2531 (noting that a defendant has the right to "consent to judicial factfinding as to sentence enhancements"); *accord* Minn. Stat. § 244.10, subd. 7 (2012). Under *Blakely,* the relevant facts used to enhance the sentence beyond the statutory maximum must be found beyond a reasonable doubt. The district court did find the relevant facts beyond a reasonable doubt in this case, but relied on testimony presented at the *trial* to find those facts. We conclude that the district court did not err in relying on evidence from the guilt phase. Because Juarez waived his right to a jury trial, the district court acted as the factfinder in both the guilt and sentencing phases of the proceeding. Neither *Apprendi* nor *Blakely* requires that the evidence presented in the guilt phase of the proceeding must also be presented to the same factfinder in the sentencing phase of the proceeding. In appropriate circumstances, a factfinder may rely on testimony and evidence from the trial when making findings on sentencing enhancements. *See Bell v. Cone,* 535 U.S. 685, 691, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (in making its sentencing determinations, "the jury could (and was instructed that it could) consider evidence from both the guilt and punishment phases"); *see also* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 8.01 (5th ed.2006) (when considering aggravating sentencing factors, the jury "may consider all the evidence presented at the trial" in addition to the evidence presented during the penalty phase proceeding).

Juarez nonetheless argues that he was not on notice that the district court intended to rely on evidence from the trial in making its findings on the sentencing enhancement. Although we agree that a defendant's lack of notice that the factfinder will rely on evidence from the trial in deciding sentencing enhancements may raise constitutional concerns, we conclude that no reversible error occurred in this case. First, the State gave notice of its intent to rely on evidence from the trial in its "Memorandum Regarding Sentencing Factors" filed prior to the hearing on the sentencing enhancement. In this memorandum, the State indicated that its factual support for the "heinous element" under section 609.3455 came from the district court's findings of fact from the trial, and specifically cited the court's finding that Juarez "removed [S.M.] from just outside the back door of the Eagles Club and took her against her will to the north end of the alley." Second, Juarez failed to demonstrate that he was prejudiced by the district court's reliance on evidence from the guilt phase. When the evidence that Juarez removed S.M. to the alleyway was introduced at trial, Juarez had a similar motive and opportunity to cross-examine and contest that evidence. He identifies no additional actions he would have taken if the evidence supporting the heinous element had been reintroduced at the hearing on the sentencing enhancement. Moreover, it is undisputed that Juarez had the opportunity to call his own witnesses and present evidence on the heinous element at the sentencing phase.

Therefore, we conclude that the district court satisfied the requirements of *Blakely* and *Apprendi* and properly enhanced Jua-

rez's sentence.[5] The district court as fact-finder did not err by relying on evidence from the trial in concluding that a heinous element existed for Juarez's offense, and that the heinous element was found beyond a reasonable doubt after Juarez waived his right to a jury.

### IV.

 Finally, Juarez argues that the evidence was insufficient to convict him of second-degree criminal sexual conduct. Because Juarez did not raise this issue in his petition for review, we conclude that it is waived. *State v. Koppi,* 798 N.W.2d 358, 366 (Minn.2011); *In re GlaxoSmithKline PLC,* 699 N.W.2d 749, 757 (Minn. 2005). But even if the argument was not waived, we would conclude it lacks merit.

Juarez argues "[t]here are a large number of inconsistencies in [S.M's] account" of the assault, in particular with regard to her claim that Juarez struck her head against the wall. But inconsistencies in testimony go to witness credibility, which is an issue for the factfinder, not this court. *State v. Pendleton,* 706 N.W.2d 500, 512 (Minn.2005). We "assume that the [factfinder] believed the witnesses whose testimony supports the verdict[,]" and disbelieved evidence to the contrary. *Id.* Here, S.M. testified that Juarez hit her head on a concrete wall causing her to lose consciousness briefly; touched her genitals and breasts; tore and attempted to remove her clothing; pinned her down; and tried to put his penis in her mouth. This testimony, if believed by the court as fact-finder, is sufficient to convict Juarez of second-degree criminal sexual conduct.

Affirmed.

---

5. After oral argument, Juarez filed a letter pursuant to Minn. R. Civ.App. P. 128.05 advising the clerk of appellate courts of the U.S. Supreme Court's recent decision in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). In *Alleyne,* the Court concluded that the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to facts that increase a statutory mandatory minimum sentence. —— U.S. at ——, 133 S.Ct. at 2163. *Alleyne,* however, does not address whether a district court acting as factfinder can rely on evidence from trial at the sentencing stage of the proceeding. We conclude that *Alleyne* is inapposite to the issue presented in this case.