STATE of Minnesota, Respondent,

v.

Clinton T. SWANSON, Appellant.

No. A04–2130.

Supreme Court of Minnesota.

Jan. 10, 2006.

OPINION

ANDERSON, G. BARRY, Justice.

Clinton Swanson appeals from his convictions of first-degree felony murder, second-degree murder, kidnapping, and false imprisonment. Swanson, alleging error on several grounds, requests a new trial, the reversal of his kidnapping conviction, or the vacation of his consecutive sentence for kidnapping. Because sufficient evidence exists to sustain the kidnapping conviction, the consecutive sentence for kidnapping does not exaggerate the criminality of Swanson's conduct, and there is no error warranting a new trial, we affirm.

This appeal arises out of the murder of Robert Schultz and the kidnapping of Candice Hansen. The parties to this appeal tell dramatically different versions of the events surrounding the murder and kidnapping.

It is undisputed that Hansen and Karol House, who disliked each other, were friends of Schultz. Schultz provided each with cocaine and House sold cocaine for Schultz.

According to the state's version of events, Schultz's frequent phone calls to House irritated her boyfriend, Swanson. On the evening of May 15, 2003, Swanson suggested to House that they travel to Schultz's house and that "everything would be taken care of." Swanson and House picked up Swanson's friend, Elijah Combs, before traveling to Schultz's home. The

three stole a vehicle and, while traveling to Schultz's house, Swanson asked House where Schultz kept his drugs and money. When they arrived, Hansen and Schultz were watching a movie. Neither Hansen nor Schultz had met Combs or Swanson. After finishing the movie, all, except Hansen, played darts and used cocaine. At one point during the evening, Hansen went into the bathroom. As she was leaving the bathroom, she heard a "popping noise" and saw Swanson pointing a handgun at Schultz. Hansen testified that she then saw Swanson shoot Schultz, and then she was tackled by Combs. While Combs and House tied Hansen up with electrical cords, Schultz, wounded, ran past Hansen into his bedroom. Swanson stepped on Hansen as he pursued Schultz. House testified that Swanson stabbed Schultz and searched Schultz and the rest of the house for drugs and money. House kicked and "stomped on" Hansen and helped Swanson search the house. After House, Combs, and Swanson left, Hansen managed to free herself. Discovering Schultz dead, she summoned help.

Swanson, Combs, and House drove away from Schultz's home in the previously stolen vehicle and Schultz's Blazer. They drove to the apartment of Swanson's friend, Karl Schaak, and en route, Swanson threw a wallet out the window of the vehicle. House and Swanson changed clothes at Schaak's apartment. Schaak then drove with Swanson, Combs, and House to a location under the "Cedar Bridge" where they burned the two stolen vehicles. Swanson was burned in the process. Schaak later drove Combs to Minneapolis to hide the murder weapons. Combs confided to Schaak that plans had gone awry—they were just supposed to "jack" (rob) Schultz. Combs, House, and Swanson were later arrested.

House, Schaak, and Hansen testified against Swanson. Evidence showed Schultz died of gunshot and stab wounds. Swanson's fingerprints were found in the bathroom and on a cigarette package at Schultz's home. DNA evidence linked Swanson and Combs to a cigarette butt found in the trash at Schultz's home and Swanson and Schultz to a blood stain found in Schaak's vehicle.

At trial, Swanson testified in his own defense, setting out a different roadmap for these events. He denied House was his girlfriend though he admitted to sleeping with her. He stated that he knew Schaak from doing drywall work with him previously. Swanson testified that he met Schultz for the first and only time on the evening of May 15, 2003. He traveled to Schultz's home with House that evening because she wanted to get cocaine from Schultz. While at Schultz's home, Swanson used the bathroom. Swanson and House left Schultz's home after 15 minutes at most and drove to Schaak's apartment. On the way, House suggested robbing Schultz and taunted Swanson for his lack of interest. At Schaak's apartment, House suggested the robbery to Schaak and Swanson fell asleep. Swanson awoke the next morning to Schaak asking him to help "get rid of some cars." Swanson traveled to a spot underneath a bridge with Schaak, House, and Combs. When Swanson asked Schaak why they were burning cars, Schaak stated, "We went and robbed that guy, that you guys were talking about." Swanson was burned in the process and was arrested several days later.

Swanson was convicted of first-degree felony murder, three counts of second-degree murder, kidnapping, and false imprisonment, but was acquitted of first-degree premeditated murder. He was sentenced to life imprisonment with the possibility of parole after 30 years for the first-degree

murder conviction and a consecutive 48 month term for kidnapping. Swanson now appeals his conviction to this court.

Swanson raises the following seven issues on appeal:

1. Whether the district court committed reversible error by failing to instruct the jury to determine, as a matter of fact, whether Schaak was an accomplice;

2. Whether the district court committed reversible error by refusing to instruct the jury that it should evaluate Schaak's testimony especially carefully because he was a cooperating witness;

3. Whether reversible error occurred due to the improper admission of Swanson's prior convictions for impeachment;

4. Whether the prosecutor committed misconduct by impermissibly vouching for the credibility of the state's witnesses and by commenting on Swanson's ability to listen to all the trial testimony before testifying;

5. Whether there is sufficient evidence to support Swanson's conviction of kidnapping;

6. Assuming the evidence supporting Swanson's conviction for kidnapping is insufficient, whether Swanson is entitled to a new trial as a result of insufficient evidence for one of the alternative felonies underlying his conviction for first-degree felony murder; and

7. Whether Swanson's consecutive sentence for kidnapping should be vacated because the sentence unfairly exaggerates the criminality of his conduct.

### I.

■ A conviction may not be based solely on the uncorroborated testimony of an accomplice. Minn.Stat. § 634.04 (2004). A district court has a duty to instruct a jury about the need for corroboration of an accomplice's testimony. *State v. Strommen*, 648 N.W.2d 681, 689 (Minn.2002). An accomplice instruction must be given if a witness testifying against the defendant might reasonably be considered an accomplice. *State v. Shoop*, 441 N.W.2d 475, 479 (Minn.1989). If the facts are undisputed, the district court determines whether a witness might reasonably be considered an accomplice, but if the "evidence is disputed or susceptible to different interpretations, then the question whether the witness is an accomplice is one of fact for the jury." *State v. Flournoy*, 535 N.W.2d 354, 359 (Minn.1995). An accomplice is one who could have been charged with and convicted of the crime with which the accused is charged. *State v. Palubicki*, 700 N.W.2d 476, 487 (Minn.2005).

■ Swanson argues that the district court committed reversible error by failing to instruct the jury to determine, as a matter of fact, whether Schaak was an accomplice for the purposes of Minn.Stat. § 634.04. As Swanson implicitly concedes, Swanson's testimony is the only evidence that Schaak was involved in the crime as more than an accessory after the fact. An accessory after the fact is not an accomplice. *State v. Henderson*, 620 N.W.2d 688, 701 (Minn.2001). Swanson's testimony, if believed by the jury, indicates Schaak would have criminal liability for the robbery and murder of Schultz and reduces Swanson's liability to that of an accessory after the fact. When determining whether Swanson's testimony is sufficient to send the question to the jury, we are faced with the question of whether, in the absence of any evidence that a witness committed the crime *with* the defendant, a witness can be

an accomplice for purposes of section 634.04.

We have previously stated that for a witness to be an accomplice "it should appear that a crime has been committed, that the person on trial committed the crime, either as principal or accessory and that the witness co-operated with, aided, or assisted the person on trial in the commission of that crime either as principal or accessory." *State v. Price*, 135 Minn. 159, 164, 160 N.W. 677, 679 (1916). In *Price*, this court concluded that a district court can never instruct the jury that a witness is an accomplice as a matter of law, a conclusion this court has since rejected. *See State v. Lee*, 683 N.W.2d 309, 314–16 (Minn.2004); *State v. Guy*, 259 Minn. 67, 74, 105 N.W.2d 892, 898 (1960). *Price's* reasoning on the issue before us today, however, remains sound. In order for a witness to be an accomplice for the purposes of section 634.04, there must be some evidence that the defendant and witness were accomplices. A witness who is alleged to have committed the crime *instead* of the defendant is, as a matter of law, not an accomplice under section 634.04. Because Swanson's version of the facts would not make Schaak an accomplice, but instead an alternative perpetrator, the district court did not err by failing to give the jury accomplice testimony instructions concerning Schaak.

## II.

■ Swanson appeals the district court's refusal to give a jury instruction specifically relating to the credibility of Schaak. Swanson's trial counsel proposed a jury instruction entitled "Testimony of a Witness under Grant of Immunity or Reduced Criminal Liability." Swanson has not cited any Minnesota authority requiring such an instruction in this situation, but argues that Schaak's inherent motiva-

tion to lie and shift blame makes the omission of this instruction reversible error. A district court's refusal to give a jury instruction is evaluated using an abuse of discretion standard. *See State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). If the substance of an instruction is already contained in the jury instructions, a court need not give the requested instruction. *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn.1995). General instructions were given by the district court authorizing the jury to give Schaak's testimony less weight as a result of his possible motive to avoid more serious charges by testifying. Given the lack of authority supporting Swanson and given the witness credibility instructions the jurors received, the district court did not abuse its discretion by refusing to issue the instruction sought by Swanson.

## III.

■ Swanson argues that he should receive a new trial due to erroneous admission of his five prior felony convictions (theft of a motor vehicle, two counts of second-degree assault, criminal vehicular operation, and possession of stolen property) for impeachment. When evaluating whether prior convictions are admissible for impeachment, a court considers five factors set out in *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978). *State v. Ihnot*, 575 N.W.2d 581, 586 (Minn.1998). Swanson alleges that the district court did not sufficiently analyze the *Jones* factors on the record, that his convictions were more prejudicial than probative, and that the rule allowing impeachment by prior conviction should be revisited by this court.

A threshold issue is whether Swanson has waived this issue. After the denial of his motion in limine to prevent the prosecution from using his prior felony convictions as impeachment under Minn. R.

Evid. 609, Swanson testified about his previous convictions on direct examination. Relying on *Ohler v. United States*, 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), the state argues that when a defendant testifies about his prior convictions on direct examination after denial of a motion to exclude the convictions, the defendant has waived review of the admissibility of the prior convictions.

While instructive, *Ohler* is an interpretation of the Federal Rules of Evidence and is not binding on this court. The reasoning of *Ohler* is at odds with Minnesota precedent. In *Ohler*, the Court cited *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), as support for its reasoning. *Ohler*, 529 U.S. at 759, 120 S.Ct. 1851. *Luce* held that a defendant must actually testify in order to preserve the issue of the admissibility of prior convictions for appeal. *Luce*, 469 U.S. at 43, 105 S.Ct. 460. But, in Minnesota, a defendant need not testify to preserve this issue on appeal. *Jones*, 271 N.W.2d at 537. The Court in *Ohler* also indicated that its holding is based on the idea that it is fair to hold a defendant to the consequences of tactical trial decisions. *Ohler*, 529 U.S. at 759–60, 120 S.Ct. 1851. We recently rejected similar reasoning, stating that "[i]t is inconsistent with our precedent and with our notion of fairness to conclude that once a defendant chooses to stipulate to evidence he was unsuccessful in getting excluded he has waived the opportunity to argue on appeal that the court erred in admitting the evidence." *State v. Jones*, 678 N.W.2d 1, 14 n. 4 (Minn.2004). In light of our prior decisions on these issues, we hold that a defendant who testifies about his convictions on direct examination after denial of a motion in limine to exclude those convictions has not forfeited the opportunity to appeal the admissibility of those prior convictions.

A district court's ruling on the admissibility of prior convictions for impeachment of a defendant is reviewed under a clear abuse of discretion standard. *Ihnot*, 575 N.W.2d at 584. Evidence that a witness has been convicted of a felony is admissible for impeachment if the court "determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). To decide this, a court examines:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538. The committee comment to Minn. R. Evid. 609(a) states that "[t]he trial judge should make explicit findings on the record as to the factors considered and the reasons for admitting or excluding the evidence." Minn. R. Evid. 609(a) comm. cmt.—1989. This court has not directly determined whether failure to make this analysis on the record is error. *See State v. Kinyon*, 302 N.W.2d 27, 28–29 (Minn.1981) (holding that although the court failed to apply the probative/prejudicial standard, the error, *if any*, was harmless); *State v. Burrows*, 295 N.W.2d 100, 101 (Minn.1980). The Minnesota Court of Appeals has held that a district court should demonstrate on the record that it has considered and weighed the *Jones* factors. *State v. Lund*, 474 N.W.2d 169, 172 (Minn.App.1991).

In this case, the district court stated on the record that "on assessing the admissibility of the impeachment evidence against the Defendant, [the court assessed] all the State versus Jones factors." The

district court made this statement well after making its ruling that the five prior felony convictions of the defendant were admissible for impeachment purposes and after the defendant testified. Swanson emphasizes that the district court had previously stated before trial that it would be inclined to admit any felony conviction under 10 years old. The district court made this pretrial statement, however, after briefing and oral argument from both parties on the *Jones* factors. Despite the district court's obvious consideration of the *Jones* factors, the failure to place the analysis on the record makes review of the district court's exercise of discretion more speculative and difficult. Put another way, absent an analysis on the record of the *Jones* factors, an appellate court does not know the reasons for the district court's decision. Due to this difficulty, we adopt the rule as set out in *Lund* that a district court should demonstrate on the record that it has considered and weighed the *Jones* factors.

But while we conclude the district court erred by failing to make a record of the *Jones* factor analysis, a review of those factors as applied to the matter before us makes clear that the error was harmless. Our examination of these factors includes:

### A. The impeachment value of the prior crime.

Swanson argues that there is very little to no impeachment value in his prior convictions. But we have held that a prior conviction can have impeachment value by helping the jury see the "whole person" of the defendant and better evaluate his or her truthfulness. *State v. Gassler*, 505 N.W.2d 62, 66–67 (Minn.1993). Because Swanson's convictions are admissible under this analysis, Swanson's argument is unavailing.

### B. The date of the conviction and defendant's subsequent history.

■ All of Swanson's convictions occurred within 10 years of his murder trial. Swanson notes that the assault convictions occurred in 1996 when he was under 20 years of age. But even an older conviction can remain probative if later convictions demonstrate a "history of lawlessness." *Ihnot*, 575 N.W.2d at 586. Because Swanson's convictions show a pattern of lawlessness and because the convictions were all less than 10 years old, the dates of the convictions do not weigh against admission of the prior convictions.

### C. The similarity of the past crime to the crime charged.

■ The more similar the alleged offense and the crime underlying a past conviction, the more likely it is that the conviction is more prejudicial than probative. *Jones*, 271 N.W.2d at 538. Swanson argues that the two assault convictions are very similar to the charged offense of murder. Due to the similarity between the crime charged and past convictions, this factor weighs against admission of the assault convictions.

### D. The importance of defendant's testimony and the centrality of credibility.

■ If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions. *State v. Smith*, 669 N.W.2d 19, 29 (Minn.2003), *overruled on other grounds by State v. Leake*, 699 N.W.2d 312 (Minn.2005); *Ihnot*, 575 N.W.2d at 587. Before trial, Swanson gave notice that he intended to present an alibi defense, a defense for which his testimony was the only evidence. The jury had to determine whether to believe Swanson or to believe House and Hansen. Because credibility

was a central issue here, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions.

Because only one of the *Jones* factors weighs against the admission of Swanson's assault convictions and none of the *Jones* factors weigh against admission of his remaining prior convictions, the district court did not abuse its discretion under Minn. R. Evid. 609(a)(1).

Swanson also argues that this court should revisit Minn. R. Evid. 609 and the use of prior convictions as impeachment evidence. Because Swanson did not make this argument before the district court, we decline to consider it on appeal. *State v. Grube*, 531 N.W.2d 484, 489 (Minn.1995).

### IV.

Swanson argues that he should receive a new trial as a result of two different types of prosecutorial misconduct. He claims that the prosecution committed misconduct: (1) by impermissibly vouching for the credibility of the state's witnesses and (2) by commenting on Swanson's ability to listen to all the trial testimony before testifying. We address each of these claims in turn.

### A.

Swanson claims that comments made by the prosecutor in closing argument are impermissible vouching. A prosecutor may not personally endorse the credibility of witnesses. *State v. Porter*, 526 N.W.2d 359, 364 (Minn.1995). When evaluating alleged misconduct, a court will look at the closing argument as a whole. *State v. Powers*, 654 N.W.2d 667, 679 (Minn.2003). The prosecutor made several statements during closing argument that appear to vouch for the witnesses' credibility. When discussing Hansen's testimony, the prosecutor stated, "Candice Hansen, very believable. Very believable witness."

Later, the prosecutor stated, "The believability of Karol House. The state believes she is very believable, primarily because her case is done." He continued, "[Karol House] is very believable. Same thing for * * * Schaak." These statements were made within a discussion of factors affecting the credibility of the witnesses, and based on that context the state argues the statements were proper. *See State v. Googins*, 255 N.W.2d 805, 806 (Minn.1977) (stating that prosecution has right to analyze evidence and "vigorously argue" state's witnesses are worthy of credibility). We hold, however, that the statement "[t]he state believes [Karol House] is very believable" is impermissible vouching on its face because the state directly endorsed the credibility of witness House.

At trial, Swanson did not object to any part of the state's closing argument and therefore we review the statements under the plain error standard. Under the plain error rule, a new trial may be granted only if: (1) there was error, (2) the error was plain, and (3) the error affected the defendant's substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). To meet the third prong, a defendant must show that the error was prejudicial and affected the outcome of the case. *Id.* at 741. If these three prongs are met, we will assess whether we should address the error to ensure the fairness and integrity of the judicial proceedings. *Id.* at 740. Given the strength of the evidence against Swanson and given that the impermissible vouching constituted only a small part of the prosecutor's closing argument, we hold the statements, while plain error, were not sufficiently prejudicial to warrant a new trial.

### B.

Swanson argues that the prosecutor's statements about Swanson's ability to

tailor his testimony to the rest of the evidence, made during the state's rebuttal to the defense's closing argument, also constitute prosecutorial misconduct. Before Swanson took the stand, his attorney made an unsuccessful motion for an order prohibiting the prosecution from questioning Swanson about or commenting on Swanson's ability to hear all of the evidence before testifying. On cross-examination, the prosecution asked Swanson several questions emphasizing this point. Swanson argues that the following passage from the prosecution's rebuttal to the defense's closing argument constitutes misconduct:

> It's interesting that after the state rests it's [sic] case, after the Defendant heard everything the state had to offer, after the Defendant heard that his fingerprints were in Mr. Schultz'[s] home in two places, after the Defendant learned that his DNA had been discovered, after the Defendant heard the eyewitness accounts, after the Defendant heard Mr. Schaak testify about what he did afterwards to help out the Defendant, the Defendant's version is he just swaps places with Mr. Schaak. He knew he had to get his DNA in that house somehow. He knew he had to get his fingerprints in that house somehow.

The United States Supreme Court has held that such comments do not violate a defendant's rights under the federal constitution. *Portuondo v. Agard,* 529 U.S. 61, 73, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000). The Court, however, did not discourage other jurisdictions from considering the question as a matter to be decided under state law.

■ A defendant's credibility is subject to impeachment by the prosecution once the defendant takes the stand and testifies. *See State v. Silvers,* 230 Minn. 12, 15, 40 N.W.2d 630, 632 (1950). Here, the issue is whether the state may impeach a defendant by arguing that a defendant can "adjust" his testimony because he testified last. Put another way, may the state attack the defendant's credibility by implicitly criticizing the defendant for exercising his constitutional right of confrontation?

The Supreme Court has described the right of a defendant to be present at his or her trial as "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause." *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). We have stated that the right to be present at trial is protected by the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *Ford v. State,* 690 N.W.2d 706, 711–12 (Minn.2005).

■ Here, the state implied that Swanson, in exercising his rights under the Confrontation Clause to be present at trial and hear the testimony against him, tailored his testimony to the state's evidence, but beyond the "fit" between Swanson's testimony and the other evidence, the state provides no evidence that Swanson did, in fact, tailor his testimony in light of the prosecution's case.[1] One can reasonably argue that, in some cases, such comments by the state are merely a statement of the obvious and therefore should be permitted. We believe, however, that although not constitutionally required, the better rule is that the prosecution cannot use a defendant's exercise of his right of confrontation to impeach the credibility of his testimony, at least in the absence of evidence that the defendant has tailored his testimony to fit

---

1. Before trial, Swanson filed notice of his intent to present an alibi defense. In this notice, he stated that he would testify that he was at Schaak's apartment at the time of Schultz's murder. This is consistent with his testimony at trial.

the state's case.[2] Without specific evidence of tailoring, such questions and comments by the prosecution imply that all defendants are less believable simply as a result of exercising the right of confrontation. The exercise of this constitutional right, by itself, is not evidence of guilt. Because the record contains neither evidence of tailoring nor any other reason for the state's argument, the prosecution's questions and comments were error.

 Once prosecutorial misconduct has been established, we must determine whether the misconduct constitutes harmless error. When reviewing claims of prosecutorial misconduct, we reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial. *State v. Morton*, 701 N.W.2d 225, 233 (Minn.2005). If the state has engaged in misconduct, the defendant "will not be granted a new trial if the misconduct is 'harmless beyond a reasonable doubt.'" *Id.* (quoting *Ture v. State*, 681 N.W.2d 9, 19 (Minn.2004)). We will find an error to be harmless beyond a reasonable doubt "only if the verdict rendered was 'surely unattributable to the error.'" *Id.* (quoting *State v. DeRosier*, 695 N.W.2d 97, 106 (Minn.2005)). Here, the impermissible questions and comments were confined to roughly two pages of transcript of a record comprising over 1,200 pages. More importantly, the state's case was very strong. Hansen and House both testified that they saw Swanson shoot Schultz. DNA evidence linked both Swanson and Combs to a cigarette butt found at the Schultz residence, and also linked Swanson and Schultz to a blood stain on the front passenger seat of Schaak's vehicle. The limited nature of the prosecutorial misconduct as well as the very strong evidence of guilt establishes that the jury's decision to convict was surely unattributable to the misconduct, and the error is therefore harmless.

## V.

 Swanson argues that insufficient evidence supports his kidnapping conviction under Minn.Stat. §§ 609.05, 609.25 (2004).[3] To uphold the conviction, the court must find sufficient evidence to convict under either section 609.05, subd. 1 or subd. 2. *See State v. Pierson*, 530 N.W.2d 784, 788 (Minn.1995). When reviewing sufficiency of evidence, a court inquires whether a jury could reasonably find the defendant guilty of the charged offense. *Id.* at 787. The court views the evidence in the light most favorable to the verdict. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989).

### A. *Liability under Minn.Stat. § 609.05, subd. 1.*

 A person is criminally liable for the crime of another if the person intentionally aids the perpetrator. Minn. Stat. § 609.05, subd. 1. Under this statute, liability attaches when one "plays some knowing role in the commission of the crime and takes no steps to thwart its

---

2. A similar approach has been taken by Massachusetts. *See Commonwealth v. Gaudette*, 441 Mass. 762, 808 N.E.2d 798, 801–03 (2004).

3. Swanson conceded at oral argument that sufficient evidence exists to find Hansen was kidnapped under Minn.Stat. § 609.25. A kidnapping conviction must be vacated if the kidnapping is "merely incidental" to the underlying crime and not otherwise criminally significant. *State v. Welch*, 675 N.W.2d 615, 620 (Minn.2004). Hansen was kidnapped to facilitate the commission of other crimes (the robbery and murder of Schultz), but the rule in *Welch* has never been used to vacate a conviction where the victim of the kidnapping was not also the victim of the underlying crime.

completion." *Pierson*, 530 N.W.2d at 788. Jurors can infer the necessary intent from factors including: "defendant's presence at the scene of the crime, defendant's close association with the principal before and after the crime, defendant's lack of objection or surprise under the circumstances, and defendant's flight from the scene of the crime with the principal." *Id.*

Viewing the evidence in the light most favorable to the verdict, the evidence is strong that Swanson "intentionally aided" in the kidnapping of Hansen. Swanson was at the scene when Hansen was restrained and tied up by Combs and House. Combs was Swanson's friend, House was Swanson's girlfriend, and Swanson arrived at Schultz's house with House and Combs. Swanson stayed with House and Combs after the murder. While Hansen was subject to restraint, Swanson stepped on her as he pursued Schultz. Swanson left the scene of the crime with House and Combs. This evidence easily meets the *Pierson* factors and sufficient evidence exists to convict Swanson under Minn.Stat. § 609.05, subd. 1.

B. *Liability under Minn.Stat. § 609.05, subd. 2.*

■ Swanson can also be held criminally liable for the kidnapping if (1) Swanson is liable under section 609.05, subd. 1 for the robbery of Schultz, (2) the kidnapping of Hansen was committed in furtherance of the robbery, and (3) the kidnapping was reasonably foreseeable as a probable consequence of the robbery. *See* Minn.Stat. § 609.05, subd. 2.

Ample evidence exists showing Swanson conspired with House and Combs to rob Schultz. House testified that, on the way to Schultz's house, Swanson asked her where Schultz kept his money and drugs. Schaak testified that Combs stated that he and Swanson were just supposed to "jack" (rob) Schultz.

Evidence also indicates that the kidnapping was committed in furtherance of the robbery. Hansen testified that, after she witnessed Swanson shoot Schultz, Combs tackled her as she "went to run." From this, the jury could reasonably infer that Hansen was restrained to prevent interference with the robbery and that the kidnapping was committed "in furtherance of" the robbery. Moreover, sufficient evidence exists that the kidnapping was reasonably foreseeable by Swanson because Swanson was aware of Hansen's presence by the time he robbed and murdered Schultz; absent the kidnapping, Swanson knew that Hansen might interfere with the robbery or murder of Schultz. Therefore we hold that sufficient evidence exists to find Swanson liable for the kidnapping under either section 609.05, subdivision 1 or subdivision 2 and Swanson's challenge to the kidnapping conviction fails.[4]

VI.

■ Swanson argues that his consecutive sentence for kidnapping should be vacated because it exaggerates the criminality of his conduct. A defendant's kidnapping sentence may be served consecutively to sentences for other crimes committed during the kidnapping. *State v. Swanson*, 498 N.W.2d 435, 440 (Minn. 1993). If a kidnapping is completely incidental to another offense and the imposition of a separate conviction for kidnap-

4. Because sufficient evidence exists to uphold Swanson's kidnapping conviction, we need not address Swanson's claim that, because there is insufficient evidence supporting his kidnapping conviction, he is entitled to a new trial due to insufficient evidence for one of the alternative felonies underlying his conviction for first-degree felony murder, Minn.Stat. § 609.185(3) (2004).

ping unfairly exaggerates the criminality of a defendant's conduct, the kidnapping conviction and sentence may be vacated. *State v. Welch,* 675 N.W.2d 615, 621 (Minn.2004); *Smith,* 669 N.W.2d at 32. A court reviews consecutive sentencing under an abuse of discretion standard. *State v. Richardson,* .670 N.W.2d 267, 284 (Minn.2003).

For the kidnapping of Hansen, Swanson was sentenced to 48 months of imprisonment to be served consecutively to his life sentence. Citing·*Smith* and *Welch,* Swanson argues this court should vacate his consecutive sentence for kidnapping because the kidnapping was completely incidental to Schultz's murder and his consecutive sentence unfairly exaggerates the criminality·of his conduct.

*Smith* and *Welch* are distinguishable from this case. In *Smith* and *Welch* we held that momentary confinement of the victim of a greater offense did not provide a basis for a separate kidnapping conviction. *See Welch,* 675 N.W.2d at 620 (victim of alleged kidnapping also victim of attempted second-degree criminal sexual conduct); *Smith,* 669 N.W.2d at 32–33 (victim of alleged kidnapping also murder victim). In this case, the greater offense, first-degree felony murder, was committed against Schultz, while the kidnapping was committed against Hansen. In light of the fact that the kidnapping victim was not also the murder victim, the separate conviction and sentence for kidnapping did not unfairly exaggerate the criminality of Swanson's conduct and the district court did not abuse its discretion in imposing consecutive sentences for the two offenses.

Affirmed.