*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0452**

State of Minnesota,
Respondent,

vs.

Montalvo Knowles,
Appellant.

**Filed April 4, 2016
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62-CR-14-2786

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

Appellant challenges his convictions of domestic assault by strangulation and gross-misdemeanor domestic assault, arguing that the district court abused its discretion

by permitting the state to introduce an unredacted telephone call he made while in the jail that included hearsay and prejudicial statements and allowing a witness to describe the content of other jailhouse telephone conversations. Appellant also asserts that the prosecutor committed misconduct that deprived him of his right to a fair trial by suggesting that he tailored his testimony after sitting through trial. We affirm.

**FACTS**

Appellant Montalvo Knowles and A.R. were in a romantic relationship. On April 22, 2014, A.R. and Knowles had an argument while he drove her back to his apartment. Knowles pulled to the side of the road, grabbed her around the neck, and choked her until she could not breathe or cry out. The two returned to Knowles's apartment, but, later in the day, A.R. told Knowles she had to go to the hospital because she was having trouble breathing. Initially, A.R. was afraid to tell Knowles that it was because of the strangulation, but she lost her temper and yelled that she could not breathe because of what he had done to her. Knowles pulled her out of the bathroom, told her "you're messing with the wrong man," pushed her to the floor, and began to strangle her again. A.R. said that the strangulation was much worse this time; she felt like her eyes were popping and that the pressure on her throat was a "ten [out of ten]." Knowles then left the apartment again.

A.R. texted her mother, J.R., to "please pray." Knowles returned and said that he was taking A.R. to her mother's home in Plymouth. During the drive, J.R. called Knowles because she was worried about the text message. Knowles, who had a good

2

relationship with J.R., said A.R. "brought out a side of him that she never wanted to see" and that he "choked her out." Knowles dropped A.R. off and left shortly afterwards.

J.R. noticed marks on her daughter's neck and that her nose "was swollen profusely." The next day, J.R. took her to the emergency room. A physician's assistant, Gregory Watkins, examined A.R. Watkins described A.R. as "tearful and anxious" and complaining of congestion and nasal pain. He questioned her more closely, and she finally admitted that her boyfriend "strangled" her. She described the incidents to him, and Watkins concluded that the bruises on her neck and the feeling of pressure on her face and nose were consistent with strangulation.

A.R. called 911 from the urgent-care facility and arranged for a St. Paul police officer to take her statement. Officer Avery Yager's report is consistent with the history A.R. gave to Watkins. Yager observed scratches under A.R.'s chin and redness in her neck area, consistent with strangulation, and took pictures. Officer Nicole Sipes conducted a follow-up investigation and interviewed A.R. and J.R. Their descriptions of the incident were consistent with their statements to Watkins and Avery.

Knowles was arrested and jailed. While he was in jail, he made a series of phone calls to friends and relatives. Jail calls are recorded and monitored, and callers are warned about this. Sergeant John Wuorinen listened to several phone calls and testified that "[i]t became apparent to me that [Knowles] was trying to orchestrate his friends and family to, on his behalf, contact [A.R.] and offer – there was offerings of gifts, money, and people talking about how they can make this matter disappear . . . if they get

physical." One of the phone calls was played to the jury, with an accompanying transcript; Wuorinen described the contents of the other calls.

Before trial, A.R. submitted a notarized statement that she had made up the allegations against Knowles. In her testimony, A.R. stated that Knowles had not strangled her and that she had said he did because she was angry at him. Knowles testified as well and also denied strangling A.R.

The jury convicted Knowles of both charges. Knowles brought a motion for a new trial, which was denied. This appeal followed.

## DECISION

## I.

Knowles argues that the district court abused its discretion by permitting the state to introduce, over his objections, a taped phone call that contained prejudicial hearsay statements, failing to redact from that evidence statements alluding to his bad character, and allowing Wuorinen to summarize other conversations. We review the district court's evidentiary decisions for an abuse of discretion, and we will generally defer to the district court's determination of whether the prejudicial nature of the evidence outweighs its probative value. *State v. Diggins*, 836 N.W.2d 349, 357 (Minn. 2013). We conclude that the district court did not abuse its discretion for three reasons.

First, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay statements are generally inadmissible, subject to certain exceptions. Minn. R. Evid. 802. The statements admitted here were not

4

offered for the purpose of proving the truth of whether Knowles committed domestic assault; rather, they were offered to rebut A.R.'s testimony and recantation of her prior statements made to police and medical personnel; the statements served to impeach A.R.'s credibility. As such, the statements were not offered "to prove the truth of the matter asserted" and are not hearsay. Minn. R. Evid. 801(c).

Second, a statement offered by a party-opponent is not hearsay. Minn. R. Evid. 801(d)(2). Knowles's statements in the telephone conversations are admissible as non-hearsay statements made by a party-opponent. In certain circumstances, evidence of threats against witnesses may be relevant as demonstrating consciousness of guilt, but such evidence may not be used to show a defendant's propensity to commit the charged offense. *Holt v. State*, 772 N.W.2d 470, 481 (Minn. 2009). Generally, the district court should provide a cautionary instruction to the jury limiting the use of such evidence. *Id.* at 481-82. The district court in this matter gave a cautionary instruction.

Third, Knowles argues that the statements of the person he spoke with during the telephone call that was played for the jury were hearsay. We disagree. "[S]tatements of third parties [to a conversation] may be admissible to provide context for the responses and admissions sought to be admitted." *State v. Caine*, 746 N.W.2d 339, 351 (Minn. 2008); *State v. Tovar*, 605 N.W.2d 717, 726 (Minn. 2000) (holding that police statements in an interview were admissible because they were offered not "for their truth, but rather to give context to [the defendant's] responses and admissions on the tape"). Here, Knowles' statements make very little sense without the responses of the person with whom he was speaking.

Knowles also argues that the district court abused its discretion by failing to redact references to his criminal record or his bad temper.  Knowles objected to the statements and asked the district court to redact them from the transcript prepared for the jury.  The district court determined that any prejudicial effect of the statements was outweighed by their probative value in light of A.R.'s recantation.  In denying Knowles' motion for a new trial, the district court stated that the evidence of bad acts was "inextricably intertwined" with the rest of the phone conversation and that the references to these acts "without understanding the defendant's criminal record, would be quite obscure, and they would be otherwise simply harmless."  The conversation played for the jury is long and rambling; the reference to an incident that occurred during a prior incarceration is brief and confusing:

> FEMALE CALLER:  Keep your hand to your mother fucking self, if mother fucker poor something in your cereal this time, don't fucking break him off, alright?
> DEFENDANT:  I didn't do nothing.  Oh, you talking about in here, yeah.
> FEMALE CALLER:  I'm [inaudible]
> DEFENDANT:  You talking about in hear, yeah.
> FEMALE CALLER:  Yeah, I'm talking about be cool. We know how your temper is.  Please.

If the district court erred in admitting the telephone call evidence, the error is not harmless "if there is a reasonable possibility that the verdict might have been different." *State v. Hall*, 764 N.W.2d 837, 842 (Minn. 2009) (quotation omitted).  This court considers several factors to determine if a verdict is surely unattributable to an error: (1) how the evidence was presented; (2) whether the evidence was highly persuasive; (3) whether the state used the evidence in closing argument; (4) whether the defendant

presented opposing evidence; and (5) the strength of the evidence against the defendant. *Id.*

Here, (1) the objectionable testimony is a short reference in a longer transcript, and it is partially unintelligible; (2) the evidence was submitted not on the issue of guilt, but to rebut A.R.'s recanted testimony; (3) the state did not use the objectionable statements in closing; (4) Knowles denied trying to influence A.R.'s testimony; and (5) the evidence of guilt was very strong. The testimony of J.R., Sipes, Avery, the 911 operator, and Watkins confirmed A.R.'s injuries and her contemporaneous description of events; although A.R. denied the assaults in her trial testimony, she confirmed the timeframe of events. This verdict was surely unattributable to an erroneous admission of evidence.

## II.

Knowles argues that the prosecutor committed misconduct by alluding to Knowles' presence at trial; she commented twice in closing that he had the benefit of sitting through the trial and suggested that he may have tailored his testimony to fit with the evidence introduced at trial. Knowles did not object at trial. This court may review an allegation of error for which there was no objection if the error was plain and affected a defendant's substantial rights; if these requirements are met, we decide whether we must address the error to ensure fairness and the integrity of judicial proceedings. *State v. Ramey*, 721 N.W.2d 294, 298 (Minn. 2006). But in the case of prosecutorial misconduct, although a defendant has the burden of demonstrating plain error, the prosecution has the burden of demonstrating lack of prejudice – that the error did not

affect the defendant's substantial rights and there was no reasonable likelihood that the misconduct significantly affected the jury's verdict. *Id.* at 302.

In *State v. Swanson*, 707 N.W.2d 645, 656-58 (Minn. 2006), the supreme court considered whether the prosecutor's remarks regarding the defendant's ability to tailor his testimony after listening to the other witnesses constituted misconduct. The supreme court concluded that because the defendant's right to confront witnesses was constitutionally guaranteed and there was no particular evidence that the defendant was tailoring his testimony, the prosecutor committed misconduct by commenting on his presence at trial. *Id.* But because the reference was limited and the evidence of guilt was overwhelming, the supreme court concluded that the error was harmless. *Id.* at 658.

Here, the prosecutor twice commented that Knowles sat through trial, listened to the witness testimony, and then testified; under the reasoning of *Swanson*, this was misconduct. But as in *Swanson*, the evidence of guilt here is strong, and the references to Knowles's presence at trial are even more limited. In *Swanson*, the prosecutor cross-examined the defendant and argued in closing about his presence at trial. *Id.* at 656-57. Here, the prosecutor made two short references in a 25-page closing argument. There is no reasonable likelihood that these references significantly affected the verdict.

**Affirmed.**

8