*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0018**

State of Minnesota,
Respondent,

vs.

Ramsey Louis Kettle,
Appellant.

**Filed December 12, 2016
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

Otter Tail County District Court
File No. 56-CR-15-1317

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Bjorkman, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his convictions of second-degree assault, making terroristic threats, and fifth-degree assault, arguing that the district court abused its discretion by

denying his motion for a mistrial, allowing him to be impeached with four prior felony convictions, and adjudicating him guilty on multiple offenses that arose from the same behavioral incident. We affirm in part, reverse in part, and remand.

**FACTS**

On May 5, 2015, appellant Ramsey Louis Kettle and B.R. were at C.B.'s home in Fergus Falls. B.R. mentioned that he had money with him, and Kettle immediately began punching him in the head while screaming that B.R. owed him $10. At one point, Kettle used a knife to cut off a lock of B.R.'s hair, telling B.R. that if he did not repay the debt the next time it "would be [his] neck, not [his] hair." The two men then left C.B.'s home. When B.R. returned to his home, his girlfriend saw his injuries and called 911.

Officer Abram Silbernagel of the Fergus Falls Police Department responded to the call. While interviewing B.R., Officer Silbernagel observed that he had a swollen right eye, was bleeding, and had dried blood on the right side of his face. B.R. gave a vague statement about Kettle assaulting him, which he later retracted. B.R. indicated that Kettle had assaulted him on a prior occasion and he did not think the court process was worthwhile. At trial, B.R. testified that he was initially hesitant to speak with the police and testify against Kettle because he feared retaliation.

Respondent State of Minnesota charged Kettle with second-degree assault, first-degree aggravated robbery, making terroristic threats, and two counts of fifth-degree assault. Prior to trial, the state sought to admit evidence of a prior court proceeding involving B.R. and Kettle to establish motive for the charged offenses. Kettle was charged with assaulting B.R. in August 2014, but was acquitted. The district court ruled that

2

evidence of the prior assault charge was inadmissible to establish motive, but indicated that limited testimony relating to Kettle and B.R.'s strained relationship was permissible so long as it did not reference the prior court proceeding. The state also sought to admit evidence of Kettle's four[1] prior felony convictions for impeachment purposes. The district court determined that the convictions were admissible, but only as unspecified felonies.

During the jury trial, Officer Silbernagel twice referenced the prior court proceeding. Kettle moved for a mistrial, which the district court denied. The jury found Kettle guilty on all counts except first-degree aggravated robbery. The district court adjudicated Kettle guilty on four counts and sentenced him to 51 months in prison on the second-degree-assault conviction. Kettle appeals.

## DECISION

### I. The district court did not abuse its discretion in denying the mistrial motion because there was no prosecutorial misconduct.

We review a district court's denial of a motion for a mistrial for an abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003). Kettle argues that the district court abused its discretion because the state improperly and purposefully elicited testimony from B.R. and Officer Silbernagel about B.R. and Kettle's contentious relationship in violation of the court's pretrial ruling. We are not persuaded.

As noted above, the state sought to admit evidence that Kettle was previously charged with assaulting B.R. The district court denied the request, but ruled that evidence

---

[1] The convictions include second-degree assault (2012), making terroristic threats (2013), fourth-degree assault (2014), and domestic assault (2014).

3

of the acrimonious relationship between B.R. and Kettle was admissible. The district court directed the parties to "avoid[] any reference to prior charges as a result of an alleged assault" and any references to Kettle being arrested, jailed, or tried in connection with that incident. The district court explained that the fact that B.R. and Kettle's relationship had not always been positive was relevant, and that limiting the scope of acceptable testimony would minimize its prejudicial impact. The district court's ruling is consistent with caselaw. *See State v. Rossberg*, 851 N.W.2d 609, 617 (Minn. 2014) (noting prior incidents involving the defendant and complainant can help provide necessary background and context to the development of an ongoing conflict that assists the jury in understanding the charged offense). The district court later reiterated that it was allowing "inquiry into events of past aggression between [B.R.] and [Kettle]" but that such inquires must avoid any reference to the criminal charges and Kettle's acquittal.

At trial, the prosecutor asked B.R. why he was afraid of Kettle. The inquiry related to B.R.'s testimony that he was initially hesitant to tell the police what had occurred and testify because he feared retaliation. The prosecutor elicited testimony that on a previous occasion Kettle allegedly "kicked the hell out of [B.R.]" because B.R. owed him money. He did not elicit testimony that the alleged assault resulted in a criminal charge against Kettle. This line of questioning complied with the district court's pretrial ruling.

In contrast, Officer Silbernagel mentioned the prior court proceeding twice during his testimony. On the first occasion, the prosecutor asked a general question about what Officer Silbernagel learned when he initially responded to the 911 call. Officer Silbernagel responded that B.R. was very vague about what transpired, stated that Kettle assaulted him,

4

later retracted that statement, and indicated that he "had been through the court process and testified against [Kettle]." The district court immediately sustained defense counsel's objection and instructed the jury to disregard the statement. During cross-examination, defense counsel questioned Officer Silbernagel as to why B.R. did not want to press charges against Kettle. When defense counsel questioned the officer as to whether B.R. expressed fear of Kettle, the officer answered "[B.R.] had said that he had been through the court process . . . and said it was not worth while." Defense counsel did not object, but later moved for a mistrial.

On this record, we discern no abuse of discretion by the district court in denying the mistrial motion. B.R.'s testimony did not conflict with the pretrial ruling. And the district court immediately sustained Kettle's objection to Officer Silbernagel's offending testimony and instructed the jury to disregard it. We assume the jury follows the district court's instructions. *State v. Ferguson*, 581 N.W.2d 824, 833 (Minn. 1998). We note that the prosecutor did not intentionally elicit the impermissible testimony; the officer mentioned the court proceeding while responding to a general question about what he had learned. Moreover, the district court correctly noted that the second reference was in response to defense counsel's repeated questions as to why B.R. was reluctant to press charges. Defense counsel knew this reluctance was based on the prior court proceeding. Finally, the challenged remarks were brief, and the jury was already aware of the prior altercation between B.R. and Kettle.

**II.     The district court did not abuse its discretion in allowing the state to impeach Kettle with evidence of four prior felony convictions.**

A district court may admit evidence of a defendant's prior felony convictions for impeachment if "the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). In determining whether the probative value of a conviction outweighs its prejudicial effect, the district court must consider

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978). We review the district court's ruling on the admissibility of a defendant's prior convictions for abuse of discretion. *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006).

Kettle argues that the district court did not properly consider whether the admission of his four prior felony convictions would be overly prejudicial. He does not challenge the district court's analysis of the *Jones* factors. Rather, he argues that, after analyzing the *Jones* factors, the district court was required to separately determine whether the admission of the four prior felonies would be overly prejudicial. We disagree.

In analyzing the *Jones* factors, the district court determined that the prior felony convictions had impeachment value, had all occurred within the past three years, were similar to the charged offenses, and that the defendant's testimony and credibility were key issues. Because the prior convictions were similar in nature to the charged offenses, which could prejudice Kettle, the district court limited impeachment to the fact that Kettle had

6

four prior felony convictions and prohibited introduction of the specific offenses of which he was convicted. *See State v. Hill*, 801 N.W.2d 646, 652-53 (Minn. 2011) (adopting a rule that allows witnesses to be impeached with prior unspecified felonies when disclosing the nature of the prior convictions would be overly prejudicial).

Contrary to Kettle's assertion, there is no requirement that, after analyzing the *Jones* factors, the district court consider whether admission of the felony convictions would nevertheless be overly prejudicial. Minnesota courts have consistently recognized that potential prejudice is part of the *Jones* framework. *See State v. Zornes*, 831 N.W.2d 609, 627 (Minn. 2013) (stating that *Jones* established "five factors relevant to determining if a prior conviction is more probative than prejudicial"); *Swanson*, 707 N.W.2d at 654 (noting the district court examines the *Jones* factors to determine if the probative value outweighs the prejudicial effect). In *Swanson*, the defendant challenged the admission of his five prior felony convictions for impeachment purposes. 707 N.W.2d at 654. The supreme court analyzed the *Jones* factors and determined the district court did not abuse its discretion by admitting the five prior felony convictions; it did not then conduct a separate analysis as to whether the admission of the five felony convictions would nevertheless be overly prejudicial. *Id.* at 654-56. Because the district court properly analyzed the *Jones* factors and carefully limited the impeachment evidence to avoid confusion and prejudice to Kettle, we discern no abuse of discretion by the district court.

III.    **Kettle's fifth-degree-assault convictions must be vacated.**

Minn. Stat. § 609.04, subd. 1 (2014) provides:

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:
> (1) A lesser degree of the same crime; or
> . . . .
> (4) A crime necessarily proved if the crime charged were proved; . . . .

The statute also forbids "multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson,* 363 N.W.2d 758, 760 (Minn. 1985). The application of Minn. Stat. § 609.04 (2014) is a question of law, which we review de novo. *State v. Chavarria-Cruz*, 839 N.W.2d 515, 522 (Minn. 2013).

Kettle was found guilty of second-degree assault, making terroristic threats, and two counts of fifth-degree assault. The district court adjudicated him guilty on all four counts, and the warrant of commitment reveals four convictions. *See Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007) (directing this court to examine the warrant of commitment to determine whether an offense has been formally adjudicated). Kettle argues that all but his second-degree-assault convictions must be vacated. The state agrees with respect to the two fifth-degree-assault convictions because fifth-degree assault is a lesser degree of second-degree assault. We agree with the parties. But the state contends that Kettle's terroristic-threats conviction need not be vacated because it is not a necessarily included offense of second-degree assault. This argument has merit.

In accordance with Minn. Stat. § 609.222 (2014), the district court instructed the jury that an assault "is the intentional infliction of bodily harm upon another, or, an intentional attempt to inflict bodily harm upon another, or, an act to cause fear of bodily harm or death in another." *See* Minn. Stat. § 609.02, subd. 10 (2014) (defining assault).

8

And the court instructed that a person makes terroristic threats when he "threatens, directly or indirectly, to commit any crime of violence with intent to terrorize or in reckless disregard of causing such terror." *See* Minn. Stat. § 609.713, subd. 1 (2014) (defining terroristic threats). The district court further explained that to convict Kettle of making terroristic threats the state must prove that he threatened to commit a crime of violence, and made the threat "with the intent to terrorize [B.R.] or in reckless disregard of the risk of causing such terror." Thus, a defendant may only be convicted of making terroristic threats if he threatens to commit a crime of violence with the intent to terrorize. But a defendant may commit second-degree assault by intentionally assaulting another without first making any threat. Because it is possible to commit second-degree assault without committing terroristic threats, the terroristic-threats offense is not necessarily included in a second-degree-assault offense. *See State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006) (stating "[a]n offense is necessarily included . . . if it is impossible to commit the greater offense without committing the lesser offense" (quotation marks omitted)). The district court therefore did not err by convicting Kettle of both second-degree assault and making terroristic threats.[2]

In sum, the district court did not abuse its discretion by denying the motion for a mistrial and allowing Kettle to be impeached with four prior felony convictions. But the

---

[2] A district court may not impose multiple sentences for offenses committed during a single behavioral incident. Minn. Stat. § 609.035, subd. 1 (2014). That did not happen here as Kettle was only sentenced on the second-degree-assault conviction.

district court did err by adjudicating Kettle guilty on the two counts of fifth-degree assault. Accordingly, we remand for vacation of the fifth-degree-assault convictions.

**Affirmed in part, reversed in part, and remanded.**