*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0604**

State of Minnesota,
Respondent,

vs.

Bashir Abdullahi Farah,
Appellant.

**Filed February 13, 2017
Affirmed
Smith, Tracy M., Judge**

Olmsted County District Court
File No. 55-CR-15-4845

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Appellant Bashir Abdullahi Farah appeals from his second-degree-assault conviction, arguing that he is entitled to a new trial because admitting evidence of his

preliminary-breath-test (PBT) result was plain error and because the district court abused its discretion in ruling that the state could impeach Farah with ten prior convictions. Because the admission of the PBT result was not plain error and the district court's ruling on the admissibility of the prior convictions was not a clear abuse of discretion, we affirm.

## FACTS

On July 16, 2015, Farah encountered O.F. while walking through a parking lot. Farah threatened to cut and kill O.F. and swung a knife at O.F. from approximately two to three feet away. O.F. picked up a metal object, intending to defend himself with it, and waved over a police officer. Farah ran away. The officer chased Farah on foot but did not catch up to him. Shortly thereafter, another police officer found Farah inside a nearby apartment and arrested him. Because Farah appeared to be intoxicated, the arresting officer administered a PBT. The PBT showed an alcohol concentration of 0.295. Farah was transported to jail.

A bystander found a knife on the ground between the location of the arrest and the location of the assault. The bystander gave the knife to a third police officer, who believed it matched the description of Farah's knife.

Farah was charged with second-degree assault, stalking with a dangerous weapon, and stalking with two or more prior violations.

Before trial, the state moved to impeach Farah with six crimes-of-dishonesty convictions and five felony convictions, should Farah testify. The district court concluded that all six crimes of dishonesty and four of the felonies were admissible for impeachment. Farah decided not to testify.

2

At trial, the arresting officer testified that the PBT showed a 0.295 alcohol concentration. The state twice compared the PBT result with the legal limit for driving, once in questioning and once in closing argument.

The jury found Farah guilty on all three counts and found an aggravating factor for sentencing. The district court sentenced Farah to the statutory maximum of 84 months in prison for the second-degree assault.

Farah appeals.

## D E C I S I O N

### I.    The admission of the PBT result was not plain error and did not affect Farah's substantial rights.

Farah asserts for the first time on appeal that admitting testimony about his PBT result was plain error because it violated Minn. Stat. § 169A.41, subd. 2 (2014). We review an error that was not objected to at trial for plain error. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Under the plain error standard, the defendant must show "(1) error; (2) that was plain; and (3) that affected substantial rights." *Id.* If those three elements are present, we may correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

Subdivision 1 of Minn. Stat. § 169A.41 authorizes a police officer to require a driver suspected of certain driving-related violations to provide a breath sample for a preliminary-screening test. Minn. Stat. § 169A.41, subd. 1 (2014). Subdivision 2 of that section states that "[t]he results of this preliminary screening test" must be used for the purpose of deciding whether to arrest the driver and require chemical testing under the implied-

3

consent law, and "must not be used in any court action except" to prove that a chemical test was properly required under the implied-consent law and in six specific types of actions related to driving and driver's licenses. *Id.*, subd. 2. The state argues that the limitations of section 169A.41, subdivision 2, apply only to PBT results obtained in the circumstances listed in subdivision 1, and that nothing in that section limits the admissibility of results of PBTs administered for reasons not involving driving, as in this case.

We conclude that section 169A.41 restricts the use of only those driving-related PBT results obtained pursuant to the authority granted in that section; it does not restrict the use of PBT results obtained otherwise. Subdivision 2 of section 169A.41 restricts the use of "[t]he results of *this* preliminary screening test," referring to the screening test that may be required of a driver under subdivision 1 of that section. *Id.* (emphasis added). The conclusion that this language limits the use of tests taken pursuant to that statute is reinforced by the fact that section 169A.41 is not the only statute addressing PBTs. Three other sections in the Minnesota Statutes authorize officers to require PBTs when they suspect someone of hunting, Minn. Stat. § 97B.065, subd. 3 (2014), operating an aircraft, Minn. Stat. § 360.0752, subd. 7 (2014), or carrying a pistol, Minn. Stat. § 624.7142, subd. 3 (2014), while under the influence of alcohol. Each of those sections limits the use of PBT results obtained under that particular section to certain purposes or types of actions related to that section. *See* Minn. Stat. § 97B.065, subd. 3; Minn. Stat. § 360.0752, subd. 7; Minn. Stat. § 624.7142, subd. 3. Thus, the use restrictions imposed by each statute corresponds to the particular authority to require the test granted by each statute.

4

Here, the officer administered the PBT not because Farah was driving, hunting, operating an aircraft, or carrying a pistol, but because Farah appeared intoxicated and, the officer testified, the jail wants to have an idea of the level of intoxication of arrestees. Because the PBT result in this case was not obtained pursuant to any of the statutes authorizing law enforcement to require a PBT, its admissibility is not restricted by those statutes, and it was not error to admit evidence of it at trial.[1]

Furthermore, even if admission of the PBT result were plainly erroneous, it would not be a reversible error because it did not affect Farah's substantial rights. *Strommen*, 648 N.W.2d at 686. "An error affects substantial rights if the error is prejudicial—that is, if there is a reasonable likelihood that the error substantially affected the verdict." *Id.* at 688.

Farah cites *State v. Litzau*, which states that "[w]here the evidence was aimed at having an impact on the verdict, we cannot say the verdict was surely unattributable to the error." 650 N.W.2d 177, 184 (Minn. 2002). Farah argues that the admission of the PBT result affected the verdict because the state used it to bolster O.F.'s credibility, which was an important factual issue for the jury. In its closing argument, the state listed factors

---

[1] In his reply brief, Farah expands on his argument that admission of the evidence was error under Minn. Stat. § 169A.41 by asserting that the PBT had to have been administered pursuant to that section because otherwise the PBT was unauthorized by law. Farah supplies no caselaw for the proposition that a PBT administered for a reason other than testing for possible intoxication of a driver is unauthorized by law or that admission of the result of such a PBT constitutes error. Without such authority, we cannot conclude that admission of such a PBT result is plain error. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (stating that an error is plain if it "contravenes case law, a rule, or a standard of conduct"). Because the question of the officer's authority to administer the PBT was not argued to or considered by the district court, we do not consider it on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

5

indicating that O.F. was credible, including that the PBT corroborated O.F.'s testimony that Farah seemed intoxicated. The state referred to Farah as "drunk," "belligerent," and "intoxicated" many times throughout its closing argument and pointed to Farah's level of intoxication as an explanation for his actions.

Although the state's repeated references to Farah's level of intoxication do seem to be "aimed at having an impact on the verdict," *see id.*, most of those instances referred to Farah as intoxicated generally; the specific PBT result was only mentioned twice. Two witnesses testified that Farah appeared to be intoxicated, which likely would have made a substantially similar impression on the jury even without the PBT evidence. We conclude that the admission of the PBT result did not affect Farah's substantial rights and that any error in admitting the evidence would not warrant reversal. *Strommen*, 648 N.W.2d at 686.

## II. The district court did not abuse its discretion in concluding that Farah could be impeached with ten prior convictions.

Farah argues that he is entitled to a new trial because he chose not to testify based on the district court's erroneous ruling that he could be impeached with ten prior convictions if he testified. We will reverse a district court's ruling on the admissibility of a defendant's convictions for impeachment only if there was a clear abuse of discretion. *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006).

Evidence of prior convictions is admissible under Minn. R. Evid. 609(a) for the purpose of attacking a witness's credibility. A felony conviction is admissible if the probative value of admitting that evidence outweighs its prejudicial effect. Minn. R. Evid.

6

609(a)(1). In applying this balancing test, the district court must consider the following "*Jones* factors":

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Ihnot*, 575 N.W.2d 581, 586 (Minn. 1998) (quoting *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978)) (holding that the *Jones* factors still apply even though *Jones* was decided before the adoption of Minn. R. Evid. 609). Convictions for crimes involving "dishonesty or false statement" are admissible to impeach regardless of felony or misdemeanor status and without balancing probative value against prejudicial effect. Minn. R. Evid. 609(a)(2).

The district court ruled that six convictions for providing a false name to an officer were crimes of dishonesty admissible for impeachment should Farah choose to testify. The district court also ruled that four felony convictions not involving dishonesty were admissible based on an analysis of the *Jones* factors. A fifth felony conviction was ruled inadmissible under the third *Jones* factor because it was very similar to the current charges.

Farah first asserts that because six false-name convictions were admissible for impeachment, any probative value of the felony convictions was outweighed by the unfair prejudice that would result from showing the jury such a high number of convictions. Evidence of a prior felony conviction has impeachment value because it allows the jury to see "the whole person" and thus better judge the trustworthiness of the witness's testimony.

7

*Ihnot*, 575 N.W.2d at 586. Frequent prior convictions showing a "pattern of lawlessness" also may be probative of the witness's credibility. *Swanson*, 707 N.W.2d at 655. Here, the record demonstrates that the district court analyzed the *Jones* factors for each of the felonies the state offered and decided to admit four of them based on those factors. The district court also reasoned that the "history of repeated offenses" would be probative of a pattern of lawlessness. *See id.* The district court's balancing of the factors was not a clear abuse of discretion.

Farah also argues that the district court abused its discretion by ruling that Farah's prior conviction of fourth-degree assault was admissible even though it was similar to the current second-degree-assault charge. The third *Jones* factor favors excluding prior convictions that are similar to the current charge. *Jones*, 271 N.W.2d at 538. But it is not necessarily an abuse of discretion to admit a prior conviction when only one of the *Jones* factors weighs against admission. *See Swanson*, 707 N.W.2d at 656 (concluding that the district court did not abuse its discretion under rule 609(a) because only the third *Jones* factor weighed against admitting the prior convictions); *State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980) (concluding that it was not a clear abuse of discretion to allow evidence of defendant's prior rape for impeachment in a sexual-assault trial even though the third *Jones* factor weighed against admitting it); *State v. Irby*, 820 N.W.2d 30, 38 (Minn. App. 2012) (concluding that the third *Jones* factor weighed against admitting a conviction, but that the district court did not clearly abuse its discretion in admitting it because no other factors weighed against it), *aff'd on other grounds* (Minn. 2014). The district court's

conclusion that the assault conviction was admissible in this case was not a clear abuse of discretion.

Finally, Farah asserts that the district court improperly considered whether Farah was "morally worthy of impeachment" in deciding to admit ten prior convictions. This challenge is based on the district court's statement that "in a sense, the Defendant has earned this. If he had less of a record, there would be less to impeach with." We do not agree that this comment reflected improper consideration of factors outside of the *Jones* factors. The full context surrounding the statement shows that the district court recognized and was appropriately weighing the potential prejudicial effect of multiple convictions against the probative value that multiple convictions have for impeaching a witness. The record shows that the district court properly analyzed the *Jones* factors and concluded that the convictions were admissible for permissible reasons.

We therefore conclude that the district court did not abuse its discretion in concluding that the state could impeach Farah with ten prior convictions if he chose to testify.

**Affirmed.**